By the Court.

This case, as it has been argued by desire of the Court, presents two questions for its consideration.
1. Whether any, and what criminal appellate jurisdiction is given? and
2. Whether under the constitution or laws *43 this tribunal can exercise a general superintending jurisdiction over Inferior Courts ?
I. With respect to the first, point, it is contended by some, that as the whole judicial power is vested in the Supreme and Inferior Courts, and the appellate jurisdiction is confided here, it necessarily follows that criminal appellate jurisdiction must be exercised by us.
Let us first examine the words of the constitution. It is declared that “ the judicial power shall be vested in one Supreme, and Inferior Courts. The Supreme Court shall have appellate jurisdiction only, which jurisdiction shall extend to all civil cases when the matter in dispute shall exceed the value of three hundred dollars. ”
It has been said, in the course of the argument, that this State being, as to internal regulations, completely sovereign, she had a right to distribute the powers of government at her will—that a declaration in the constitution that the appellate power shall extend to civil cases, is no restriction on the Court to exercise it in criminal, and that nothing can be inferred from legislative silence ; that even had the Legislature attempted, to prohibit its exercise, it would have been an unconstitutional act, and consequently void.
Before we proceed further, it is important to ascertain, whether appellate jurisdiction be at all *44 essential to the exercise of judicial power—whether it is absolutely necessary in criminal cases—and a sovereign State may not refuse it altogether, or establish it in some cases and deny it in others.
These questions may be answered by a re-sort to general principles, and by a reference to the practice of other countries—of our own and of our sister States.
That a sovereign State has a right to establish such a judicial system as it pleases, is a proposition that must be assented to by all. The sole restraint that we can imagine is, that in the distribution of its powers it shall not violate any of the great principles secured by tine national compact; but the only imperious duty of the State, in this department, is to establish tribunals for the decision of disputes amongst individuals, and for the trial of offences against the social order. But whether this shall be done in one Court or in many, whether the first decision shall be final, whether there shall exist one appeal or more, or in what cases it may be granted, is not to be regu-lated by those whom the people may call to the important duty of framing a constitution.
That this was perfectly understood by the convention of this State, appears by restraining appeals in civil cases to sums above the value of three hundred dollars. That the erection of Courts of appeal has not been deemed important to the protection of life or liberty, is easily proyed from *45 the practice of our own territory for nine years past, from the organisation of the federal Courts of the United States, and of other states, partiCularly Kentucky.
The words of the constitution of the United States, conferred on Congress as full power to establish appellate jurisdiction in Criminal cases, as could possibly be granted. “ The judicial power shall extend to all cases in law or equity arising under this constitution, the laws of the United States, or treaties made, or which shall be made under their authority—the Supreme Court shall possess appellate jurisdiction both as to law and fact, (except in cases of ambassadors and consuls) under such regulations as Congress shall prescribe. ” Laws were immediately passed defining offences and organizing the Courts. Have Congress passed any laws on the subject of criminal appellate jurisdiction ? Have not their Courts, over and over again, refused to exercise it, because it was not given by Congress? Have not those Courts been in operation twenty years or more, and have not cases occurred which might remind Congress to establish such a jurisdiction, if they really thought it necessary^ ? ‘ Have not two insurrections been suppressed, and many offenders tried for capital offences? We cannot have forgotten die case of Fries-and of so many others, where it was said that the doctrine of treason was carried to its utmost extent, by a time *46 serving Judge, to promote his own ambitious views; and that this able and much calumniated magistrate was impeached, and acquitted by the good sense of the Senate ? Do we not recollect the more recent case of Burr, where it was openly declared that the great and upright magistrate, who. presides with so much usefulness and dignity on die Supreme bench of the United States, relaxed the law of treason to favor the escape of a powerful criminal ? Have these cases passed unnoticed ? No—they have not. The late President of the United States caused a special message to be sent to Congress, enclosing the testimony in the case of Burr, and called their attention to the defects of the law, or the administration of it. Yet after this solemn call, and after much deliberation,Congress have not discovered the want of a criminal appeal to be a defect in the system ; and altho’ their Courts have refused to exercise it, and it is in their power to confer it, they have not thought it essential to the security of life or liberty to establish any such jurisdiction. Let us proceed one step further, and we shall find, in one State at least, that the exercise of this power has been expressly forbidden to the Court of appeals.
By the constitution of Kentucky it is declared, that the Court of appeals (except in cases otherwise directed by this constitution) shall have appellate jurisdiction only, "which shall be co-extensive with the State, under such restrictions *47 and regulations, not repugnant to the constitution, as may fifom-time to time be prescribed by law. ” From these expressions it is clear that the Legislature of Kentucky might have vested in that Court a criminal appellate jurisdiction; but so far from doing so, they have declared that altho’ a writ of error shall be demandable of right, yet it shall not issue in those cases which may be brought before and determined by the District Court, under the criminal jurisdiction of said Court, in which cases, “ no certiorari, appeal, supersedeas, or writ of eror shall be allowed. ”
From the example, we must believe that many and weighty reasons presented themselves against the establishment of a criminal appeal—and may not many arguments be urged ?
When we reflect, also, that our criminal Code is perhaps the mildest in the world, and that our mode of trial gives every chance for innocence to vindicate itself; when from long experience we know that the general leaning of Courts and juries is in favor of the accused and the sacred regard which is always held for the rights secured to them by the constitution—when we reflect with what diffidence and scrupulosity criminal jurisdiction is exercised, and that the District Courts are presided by men of legal learning, and when we further consider the great advantages resulting to the community from the speedy infliction of punishment after the clear conviction *48 ^It^^hen we reflect on the difficulty of-removing- prisoners from the remote, parts of the -Staterthe danger of escape, and the thousand other embarrassments that .present themselves in -a croud; we are persuaded that the convention of Louisiana never intended to establish this as a Court of-criminal appellate power.
This intention we think is clearly Collected from the words of the constitution. “ The Supreme Court shall have appellate jurisdiction only, which jurisdiction shall extend to civil cases when the matter in dispute shall exceed the value of three hundred dollars. ”
A general definition of the jurisdiction having been first given in these words—“ the Supreme Court shall have appellate jurisdiction only, ” it may be said that all cases were included. If nothing further than an exclusion of civil cases under three hundred dollars was intended', the plain expression would have been—“ which jurisdiction shall not extend to civil cases under. three hundred dollars. ” But as the constitution stands, the first part of the section establishes the kind of jurisdiction—it shall be appellate only— the other speaks of its extent-it shall extend to all civil cases above the value of three hundred dollars : and the whole is evidently an affirmative description of the kind and extent of the jurisdiction. An affirmative description of the authority granted, must imply an exclusion of any *49 other authority. The maxim of law, expressio unius est exclusio alterius, applies with peculiar propriety to a case of this nature. Affirmative words are often,, in their operation, negative of other objects than those affirmed. In the case cited at bar, United States vs. Moore, 3 Cranch, 69, it was contended in support of the jurisdiction of the Court, that, as criminal jurisdiction was exercised by the Courts of the United States, under the description of all cases in law and equity arising under the constitution and laws of the United States, and as the appellate jurisdiction of the Court was extended to all enumerated ca$es other than those which might be brought in originally, with such exceptions and regulations as Congress shall make, the Supreme Court possessed appellate jurisdiction, in criminal as well as civil cases, over the judgments of every Court, whose decisions it could review, unless there should be some exception or regulation made by Congress, which should circumscribe the jurisdiction conferred by the constitution.
This argument, says the Chief Justice, would be Unanswerable, if the Supreme Court had been created by law, without describing its jurisdiction. So we say here, the argument of gentlemen would be conclusive, had there been no description of our appellate jurisdiction. But the constitution of Louisiana has done with respect to us, that which the acts of Congress had done with respect to the *50 Supreme Court of the U. S., that is, it has given ail affirmative description of our powers, and declares they shall extend to civil cases above the value of S -300. The ground of refusal, stated by the Chief Justice, is that the jurisdiction of the; Court has-been described and an affirmative description of its powers .must be understood as regulated under the constitution prohibiting the exercise of other powers than those described. Where then is the difference between those cases, but that in the one the regulation Or description is made by the constitution itself, and in the other, it is by law, under it ? Shall a constitutional description of jurisdiction have less efficacy than a legislative one ? Shall there be one rule for the construction of a statute and another for the interpretation of a constitutional act ?
This rule, it is acknowledged, must operate upon a part of this sentence. It is not pretended that the Supreme Court can exercise jurisdiction, as an appellate Court, in civil cases under the value of ⅞ 300. In virtue of what rule is this taken for granted ? By the rule, so familiar to every lawyer, that the affirmative declaration of the jurisdiction is an exclusion of any other. But, why shall .we stop the operation of the rule here, and not Suffer it to have its full force ? If we admit its influence upon the amount; of jurisdiction, we must admit it also upon its object and extent.
The Chief Justice of the United States, in the *51 case of Moore, proceeds to observe that the appellate jurisdiction of the Supreme Court from the Circuit Courts is described affirmatively—no restrictive words are used : yet it has never been supposed that a decision of a Circuit Court could be reviewed, unless the matter in dispute should exceed $ 2000. There are, no words in the act restraining the Supreme Court under that sum; their jurisdiction is limited by the legislative declaration that they may review the decisions of the Circuit Court, when the value in dispute exceeds the value of S 2000.
A distinction has been attempted to be drawn between tire Courts of the United States, -and those of a sovereign State. In the one, it is said nothing can be exercised, but what is expressly given—in the other, every thing is retained and may be, exercised in the most unrestrained and unbounded manner. This distinction is correct so for as it respects the several governments—the federal government possesses no power, nor can exercise any other, than that which is expressly granted by the federal constitution; but the moment that grant is made, its right to exercise it is as ample as that of any state in its sovereign capacity, and all the rules, applicable to the several acts regulating it, must be the same in both. There then can be no doubt of the power of the general government to exercise every sort of judicial power, under the constitution and laws of *52 the United States, and its authority to distribute' ^ to its different Courts, is as complete as that of any state sovereignty in the union. With these ob-servatipns we shall dismiss this part of the subject. It is the unanimous opinion of the Court, that it cannot exercise any criminal appellate jurisdiction.
II. The next question, for the consideration of the Court, is whether a general, superintending jurisdiction is given over the Inferior Courts ?
It is contended in argument that this Court has two characters : 1st that dfa Court of appeals, and 21y of a great superintending tribunal over all Inferior Courts. It is then said that for the purpose of carrying into execution all those powers, the 17th clause of the judicial act has declared “ that the Supreme Court shall have power to “ make and issue all mandates necessary for the “ exercise of its jurisdiction, over the inferior “ tribunals, agreeably to the principles and ma- “ xims of law. ”
In the consideration; of this question, we must always keep in.view, that the jurisdiction of this Court is appellate only. Chief Justice Marshall (in the case of Bollman and Swartout) very properly observes that Courts, which originate in the common law, possess a jurisdiction, which must be regulated, by-their common law, until same statute shall change the established principles; *53 but Courts, which are -created by written law and whose jurisdiction is defined,by written law cannot transcend that jurisdiction, This is not the language of the federal Courts only, the same principles prevail in the Courts of the several States. In the case of Yates vs. the people, reported in 6th Johnston—it is observed by Judge Thompson, that it was warmly pressed upon the Court to construct their powers so as to extend their supervising jurisdiction, but he says he has the fullest confidence that it will not be done so. Chief Justice Kent, speaking of the. Court of appeal in New-York, remarks, “ this Court is as much bound by law as any Court within the State : the idea that it has an undefined description in any case is: wholly unfounded. The members take the same oath as, -is taken by other judicial officers, they are bound by the most solemn sanctions, legal, moral and religious, to seek after and declare the law. Whether it be defective or unpalatable is not to be made 3. question here. It is the business of the legislature to make and amend the law, ,and the duty of every Court to pronounce it, as they find it. ” The appellate jurisdiction, to be exercised by this-Court, must be judicially appellate, that is, it must be the revision and correction of a judicial'decision, and, in this State, can only be exercised in cases above the value of three hundred dollars.
The great and extensive powers possessed by die Court of King’s Bench in England, of sti- *54 perintending the inferior tribunals and of issuing the great prerogative writ of mandamus, is the exercise of original jurisdiction and not appellate by writ of error or appeal. Blackstone declares it to be the peculiar duty of the King’s Bench to superintend all inferior tribunals, and to inforce the due exercise of the judicial or ministerial powers which the crown or legislature, may have invests edthem with, and this not only by restraining their excesses, but also by quickening their negligence and obviating their denial of justice. Does this Court possess any such authority f -From whence is it derived ? Is this a Court of common law with remnants of regal prerogatives about it ? Or is it a Court constituted the other day by a written instrument in which its powers are defined ? There is no analogy between our plain appellate Court of limited jurisdiction and the Court of King’s Bench in England, with all its splendid attributes of regal sovereignty. That Court had original US well as appellate jurisdiction—it was an emanation from the King’s prerogative : it had original jurisdiction in capital offences and misdemeanors of a public nature, tending to a breach of the peace, to oppression, or to any manner of misgovern ment. It was the cusios mortim of the nation : it had supreme authority, the King being still presumed by law to sit there, as judge of the Court, tho’ he judged by his judges, and the proceedings are supposed to be coram nobis, that is before the *55 King himself, for which all writs in that Court are so made returnable, and not coram justiciariis nostris. '
But, it is asked, what meaning is to be given to the words of the 17th clause “ shall have power “ to make and issue all mandates necessary for the “ exercise of their jurisdiction over the Inferior “ Courts ? ” The answer is a very plain one— by this section, the Court is enabled to inforce its appellate power over the District and City Courts; should they refuse to certify a record, or refuse to obey the sentence or decree of this Court, mandates will be necessary to compel obedience to our judgments.
But is there to be no superintending jurisdiction ? Are petty magistrates to be permitted to , exercise their village tyranny, unrestrained, and shall there be no power to keep them within bounds ? District Courts are established throughout the State; legal characters preside, and it is declared by the 16th section “ That the pro- “ ceedings of the District Courts' in civil -and “ criminal cases shall be governed by the acts of “ the Territorial Legislature, regulating the pro- “ ceedings of the late Superior Court, and they “ shall have the same powers, when not inconsis- “ tent with this act, which were granted to the “ said Superior Court by said acts. ”
The powers of that Court are believed to have been amply sufficient for the purposes proposed, *56 and if not, the Legislature can easily cónfer them, but, were there a defect, it would be no reason for a Court of appellate authority to assume the exercise of original jurisdiction.
Much has been said about the Supremacy of this Court : it is urged that the word supreme can signify nothing less than^hat this Court possesses a supreme power over all the others, and an unbounded authority to correct their conduct in every case. The Court, however, do not see in this expression any thing which would warrant the assumption of these extensive powers. This is indeed the Supreme Court of the State, but supreme only, in the exercise of the jurisdiction assigned to it by the constitution. In that jurisdiction there is no power above it. It is supreme—wherever that jurisdiction extends, it is supreme, but because this Court is called supreme, to pretend that its supremacy must of necessity extend to all cases is certainly an extraordinary idea. According to that mode of reasoning, the power of a Court, once established with the title of Supreme Court, could not be defined or limited : for if limited at all, it would cease to be a Supreme Court, yet no man has ever thought of contesting the right of the people to distribute the powers of government as they please and using that right they have confined the jurisdiction of this Court to certain cases. The highest Court of the U. States is called the Supreme Court, yet its powéris *57 are defined and circumscribed and so are those of the Supreme Court of the several States.
To those who with the best intentions have made such animated appeals to the dignit and supremacy of this Court, we will observe, in the words of the Chief Justice of New-York, “ that “ this Court cannot possibly approve of the sug- “ gestions of counsel, to encourage an enlarge- “ ment of its authority, to vindicate to itself the “ powers that the best Court of errors ought to “ have and not to clip the rights of the citizen by ‘ ‘ strict rules and technical standards—-how can this “ Court vindicate or assume to itself powers not “ given to it by law ? ” If such should be our conduct, there would be an end of all law and security within these walls. We should have no certain medium or standard of justice—the citizen would never know when he was. safe or what were his rights. This Court would soon become terrible to the suitor and destructive of the established law of the land. In our opinion, no Court should be more scrupulously cautious than this of over-leaping its constitutional and legal barriers, because it is a Court of final resort and no other Court can correct its abuses—such an unchecked tribunal would soon become the public terror, or perhaps the public scorn, if it once dreams of discretion or usurpation. Let authority be once assumed under pretence that it is impliedly granted, and liberty must soon make room for arbitrary power,
*58 Upon the whole, we are of opinion that this is not a case within the appellate jurisdiction of this Court, and the application must therefore be rejected»