STATE OF NORTH CAROLINA v. DANIEL EASLEY DEFOE

No. 161PA09

(Filed 15 April 2010)

**Homicide— capital first-degree murder—two and one-half year delay holding Rule 24 pretrial conference—failure to show prejudicial error**

The trial court did not err in a double first-degree murder case by permitting the case to proceed capitally despite the State's two and one-half year delay in holding a pretrial conference pursuant to Rule 24 of the General Rules of Practice for the Superior and District Courts because: (1) although after the 2001 amendments to N.C.G.S. §§ 15A-2001(a)(1) and 15A-2004(a), and (b) it is within the inherent authority of the trial court to enforce Rule 24 by declaring a case noncapital in appropriate circumstances, precluding a capital prosecution is an appropriate sanction only when the defendant makes a sufficient showing of prejudice resulting from the State's delay in holding the Rule 24 conference; and (2) defendant has not demonstrated that the State's noncompliance, while egregious, caused sufficient prejudice to warrant declaring the cases noncapital since defendant's lack of second counsel, investigators, and mitigation specialists at an earlier juncture did not cause sufficient prejudice to warrant declaring the cases noncapital. The requirements of Rule 24 are mandatory and lesser sanctions such as contempt or disciplinary action could be appropriate enforcement measures.

Justice NEWBY concurring in result only.

Justice BRADY joins in the concurring opinion.

STATE v. DEFOE

[364 N.C. 29 (2010)]

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review orders dated 8 January 2009 entered by Judge Christopher Collier in Superior Court, Richmond County, denying defendant's motions that his case be dismissed or declared noncapital. Heard in the Supreme Court 6 January 2010.

*Roy Cooper, Attorney General, by G. Patrick Murphy, Special Deputy Attorney General, for the State.*

*Staples S. Hughes, Appellate Defender, by Daniel Shatz, Assistant Appellate Defender, for defendant-appellant.*

TIMMONS-GOODSON, Justice.

The issue presented in these cases is whether the General Assembly's 2001 amendments[1] to the capital punishment statutes abrogated this Court's decision in *State v. Rorie*, 348 N.C. 266, 500 S.E.2d 77 (1998), so that the superior courts now have authority to declare a case noncapital as a sanction for the State's noncompliance with Rule 24 of the General Rules of Practice for the Superior and District Courts. We hold that the 2001 amendments eliminated the rationale on which *Rorie* was decided, and thus, legislatively abrogated our holding. However, there is an insufficient showing of prejudice to justify declaring the cases noncapital. Therefore, we affirm the trial court's ruling permitting the cases to proceed capitally.

## I. Background

On or about 25 March 2006, defendant was arrested for the murders of Laxavier Jamiel Henry and Billy Glenn Medford, the first murder allegedly occurring on 10 March 2006 and the second on 23 March 2006. The grand jury returned true bills of indictment charging defendant with first-degree murder in both cases on 8 May 2006.[2]

On 21 June 2006, an assistant district attorney filed an "Application for Rule 24 Pre-Trial Conference [and] Notice of Intent to Seek Death Penalty" that listed the docket numbers of both murder cases against defendant. Rule 24 requires

---

1. *See* Act of May 8, 2001, ch. 81, secs. 1, 3, 2001 N.C. Sess. Laws 163, 163-65 (amending N.C.G.S. § 15A-2000(a) & enacting N.C.G.S. § 15A-2004 (2009)) (collectively "2001 amendments").

2. The cases against defendant are 06CRS51011 and 06CRS51014. The grand jury also indicted codefendant Jason Matthew Patton for the same murders. The codefendant is not a party to this appeal.

a pretrial conference in every case in which the defendant stands charged with a crime punishable by death. No later than ten days after the superior court obtains jurisdiction in such a case, the district attorney shall apply to the presiding superior court judge or other superior court judge holding court in the district, who shall enter an order requiring the prosecution and defense counsel to appear before the court within forty-five days thereafter for the pretrial conference.

Gen. R. Pract. Super. & Dist. Cts. 24, 2009 Ann. R. N.C. 21.

In accord with Rule 24, the assistant district attorney's 21 June 2006 application requested the trial court "to schedule a Pretrial Conference in the above captioned matter within the next forty-five (45) days." The application also gave notice "to the above named Defendant and the Court, of the State's intent to seek the death penalty." However, the application was filed more than ten days after the grand jury returned the indictments, and the pretrial conference did not occur within forty-five days thereafter.

At some point, the Richmond County District Attorney's Office determined it had a conflict of interest and could not prosecute defendant for the murders. In a letter dated 28 November 2007, well over a year after the initial request for a Rule 24 conference, the Richmond County District Attorney's Office requested the Attorney General's Office to prosecute the murder charges against defendant. The Attorney General's Office agreed to prosecute both cases and requested the relevant files in a letter dated 3 December 2007. The Richmond County District Attorney's Office completed transfer of its relevant files by April or May 2008.

On 19 June 2008, defendant, through his counsel, filed a "Motion to Compel Compliance" complaining of the State's failure to provide discovery and to conduct a Rule 24 hearing. Specifically, the Motion to Compel asserted that a written discovery request filed on 12 June 2006 had gone unanswered despite numerous oral follow-up requests. The Motion to Compel also noted that the State had not yet conducted a Rule 24 hearing, notwithstanding its request two years earlier. Defendant requested various forms of relief, including dismissal, sanctions, and an order to compel discovery. Notably, however, the motion also stated that defense counsel "does not know but will be able to better determine whether or not the Defendant has been prejudiced by the delay of the State." No order ruling on the Motion to Compel is contained in the record, but defendant's later fil-

STATE v. DEFOE

[364 N.C. 29 (2010)]

ings indicate that the State provided "a banker's box full of Discovery" in July 2008.

On 7 November 2008, the State filed a "Notice of Intent to Seek the Death Penalty" and an "Application for Pre-Trial Conference on Charge of First Degree Murder" pursuant to Rule 24.[3] Both were signed by two special deputy attorneys general. On 11 November 2008, defendant responded by filing a "Motion to Strike State's Notice of Intent to Seek Death Penalty As Well As Preclude State from Seeking the Death Penalty" ("Motion to Strike"). The Motion to Strike alleged that the two and one-half year delay from the date of indictment violated defendant's constitutional and statutory rights to a "correct Rule 24 Hearing," a speedy trial, and timely discovery. The Motion to Strike stated further that "the delay has impaired Defendant's ability to challenge not only his identification but the circumstances surrounding any involvement he may have had with regard to the crimes charged." The Motion to Strike complained that witnesses' recollections may have been compromised. Defendant made essentially the same assertions in two contemporaneous filings—a "Motion to Preclude State from Applying for a Pre-Trial Conference on Charge of First-Degree Murder" and a "Motion to Dismiss Case for the State's Flagrant Violation of Defendant's Rights."

The parties appeared before the trial court on 1 December 2008 for an anticipated hearing on the State's application for Rule 24 conference and defendant's motions in opposition. The Rule 24 conference did not occur as expected, and the trial court entered an order resetting the hearing for 8 January 2009. The parties agreed that the period between 1 December 2008 and 8 January 2009 would not be a basis for either side to claim prejudice.

The State's application for Rule 24 conference and defendant's motions in opposition were heard on 8 January 2009, more than thirty months after the initial filing by the State on 21 June 2006 of the application for Rule 24 conference. Defendant argued that the State was in continuous violation of Rule 24 and that he had suffered serious prejudice from the State's failure to hold a timely pretrial conference.

_____

3. Only a "Notice of Intent to Seek the Death Penalty," referencing docket number 06CRS051011, and showing no "Filed" stamp, is appended to defendant's brief to this Court. Appended to the State's brief are an "Application for Pre-Trial Conference on Charge of First Degree Murder" and "Notice of Intent to Seek the Death Penalty," both referencing docket number 06CRS051014 and showing "Filed" stamps of 7 November 2008.

Specifically, defendant asserted that he had been unable to obtain funding for second counsel, private investigators, or mitigation specialists. Defendant argued that the 2001 amendments abrogated the *Rorie* decision, thus permitting the trial court to declare the cases noncapital as a sanction for the State's egregious noncompliance with Rule 24.

The trial court disagreed with defendant. Acknowledging that the 2001 amendments changed the law, the court nonetheless ruled that, based on *Rorie*, it lacked authority to declare the cases noncapital. Furthermore, the trial court was "not convinced that there is any prejudice." The court noted that defendant could have applied for second counsel, an investigator, and a mitigation specialist at any time, and also observed that the "case[s are] not scheduled for trial in the near future." Without authority to declare the cases noncapital for the State's failure to comply with Rule 24, and a lack of prejudice to justify that sanction in any event, the trial court overruled defendant's objections to the Rule 24 conference. Thereafter, the trial court heard the prosecutor's forecast of aggravating circumstances and ruled that the cases could proceed capitally. This Court allowed defendant's petition for writ of certiorari to review the trial court's rulings on defendant's objections to the violation of Rule 24.

## II. Analysis

Defendant first argues that the 2001 amendments abrogated this Court's holding in *Rorie* by granting district attorneys discretion in first-degree murder cases when evidence of one or more aggravating circumstances exists. With that discretion, defendant argues, superior courts have authority to declare the case noncapital when the State fails to comply with the mandates of Rule 24. The State contends that defendant "misapprehends the effect" of the 2001 amendments. We agree with defendant.

Prior to 2001, the capital punishment statutes, as interpreted in judicial decisions, mandated district attorneys to seek the death penalty in first-degree murder cases if there was evidence of an aggravating circumstance. *See Rorie*, 348 N.C. at 270-71, 500 S.E.2d at 80 (citing N.C.G.S. § 15A-2000 (1997)); *State v. Britt*, 320 N.C. 705, 709-10, 360 S.E.2d 660, 662-63 (1987); *State v. Jones*, 299 N.C. 298, 308-09, 261 S.E.2d 860, 867 (1980). District attorneys had no discretion to prosecute a first-degree murder case noncapitally when evidence of an aggravating circumstance existed. *E.g., Rorie*, 348 N.C. at 271, 500 S.E.2d at 80.

In *Rorie,* the Court was confronted with the question of whether the trial court exceeded its authority to enforce Rule 24 by precluding the State from prosecuting a first-degree murder case capitally. *Id.* at 267, 500 S.E.2d at 78. The trial court found and concluded as a matter of law

that the most important purpose of Rule 24 is to assure that the Defendant has effective assistance of counsel and that on these facts, there has been a substantial violation of the defendant's rights to effective assistance of counsel by virtue of the state's failure to timely file its Rule 24 Petition and the Court will preclude the state from seeking the death penalty. ·

*Id.* at 268, 500 S.E.2d at 78-79. The State conceded, and this Court recognized in *Rorie,* that trial courts of this State have inherent authority to enforce procedural and administrative rules, including Rule 24. *Id.* at 269, 500 S.E.2d at 79. The courts' inherent authority to enforce Rule 24, however, stops short of actions that are "inconsistent with the Constitution or acts of the General Assembly." *Id.* at 270, 500 S.E.2d at 79-80. Because the trial court's order in *Rorie* precluded the district attorney from seeking the death penalty "notwithstanding what evidence of an aggravating circumstance or circumstances may exist," this Court held that the trial court exceeded its inherent authority to enforce Rule 24. *Id.* at 271, 500 S.E.2d at 80. The trial court's order was "potentially in conflict with the mandate of the General Assembly in the capital sentencing statute." *Id.* We admonished district attorneys, however, that the requirements of Rule 24 are mandatory and that lesser sanctions such as contempt or disciplinary action could be appropriate enforcement measures. 348 N.C. at 271-72, 500 S.E.2d at 80-81.

In 2001, the General Assembly added the following provisions to the capital sentencing statutes:

(a) The State, in its discretion, may elect to try a defendant capitally or noncapitally for first degree murder, even if evidence of an aggravating circumstance exists. The State may agree to accept a sentence of life imprisonment for a defendant at any point in the prosecution of a capital felony, even if evidence of an aggravating circumstance exists.

(b) A sentence of death may not be imposed upon a defendant convicted of a capital felony unless the State has given notice of its intent to seek the death penalty. Notice of intent to seek the

death penalty shall be given to the defendant and filed with the court on or before the date of the pretrial conference in capital cases required by Rule 24 of the General Rules of Practice for the Superior and District Courts, or the arraignment, whichever is later.

N.C.G.S. § 15A-2004(a), (b) (2009). The General Assembly also amended section 15A-2000 to provide:

*Except as provided in G.S. 15A-2004*, upon conviction or adjudication of guilt of a defendant of a capital felony in which the State has given notice of its intent to seek the death penalty, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment.

*Id.* § 15A-2000(a)(1) (2009) (emphasis added). The 2001 amendments revoked the statutory mandate that required prosecutors to seek the death penalty in first-degree murder cases with evidence of one or more aggravating circumstances. Thus, the 2001 amendments significantly undercut the rationale on which *Rorie* was decided.

Although the 2001 amendments gave prosecutors discretion in first-degree murder cases, the changes did not alter the mandates or the gatekeeper function of Rule 24 in capital cases. While defendants "do not stand to lose or gain any rights" at the Rule 24 conference, it remains an important "administrative device intended to clarify the charges against the defendant and assist the prosecutor in determining whether any aggravating circumstances exist which justify seeking the death penalty." *State v. Chapman*, 342 N.C. 330, 339, 464 S.E.2d 661, 666 (1995), *cert. denied*, 518 U.S. 1023, 135 L. Ed. 2d 1077 (1996). Furthermore, the Rule 24 conference is the pivotal point in the pretrial proceedings when the court may declare the case capital, triggering appointment of second counsel and making public resources available to aid an indigent accused in preparing his defense. N.C.G.S. §§ 7A-450, -454 (2009); Indigent Def. Servs. R. 2A.2(d), 2D.1, 2009 Ann. R. N.C. 906, 915. With the Rule 24 hearing comes oversight of the capital litigation and acute supervision of further proceedings by the trial court. For these reasons, among others, "Rule 24's ten-day time limitation clearly contemplates that cases which may be tried capitally are to be identified as early as possible in the process." *Rorie*, 348 N.C. at 269, 500 S.E.2d at 79.

In addition to its gatekeeper function, the prompt Rule 24 conference preserves valuable public resources by avoiding allocation of

funds for second counsel and mitigation experts to defendants accused of capital offenses but who are tried noncapitally. In light of its important role in capital cases, the State must heed the " 'simple, bright-line rule, requiring prosecutors to petition for a [Rule 24] conference in *all* capital cases.' " *State v. Seward*, 362 N.C. 210, 213, 657 S.E.2d 356, 358 (2008) (quoting *State v. Matthews*, 358 N.C. 102, 110, 591 S.E.2d 535, 541 (2004)). As this Court has repeatedly stated, Rule 24 places the duty upon the State to apply to the court for the pretrial conference. *See id.*; *Matthews*, 358 N.C. at 109-10, 591 S.E.2d at 541; *Rorie*, 348 N.C. at 271-72, 500 S.E.2d at 80-81.

When the State fails to comply, this Court has repeatedly acknowledged the trial courts' inherent authority to enforce the mandates in Rule 24 through the contempt power or disciplinary action. *See Matthews*, 358 N.C. at 110, 591 S.E.2d at 541 ("If the prosecutor fails to petition the superior court for a pretrial conference, he risks disciplinary action."); *Rorie*, 348 N.C. at 271-72, 500 S.E.2d at 80-81 ("Repeated violations of the rule manifesting willful disregard for the fair and expeditious prosecution of capital cases may result in citation for contempt pursuant to N.C.G.S. § 5A-11(7) or other appropriate disciplinary action against the district attorney."). Before the 2001 amendments, a court's authority to enforce Rule 24 could not extend to declaring a case noncapital, because such an order was in potential conflict with a statutory mandate. As noted above, the 2001 amendments revoked that statutory mandate, and we have recently held that "the trial court may properly declare [a] case noncapital" if the State's "forecast of evidence at the Rule 24 conference does not show the existence of at least one aggravating circumstance." *Seward*, 362 N.C. at 215, 657 S.E.2d at 359 (citing N.C.G.S. § 15A-2000(c) (2007)). Because the 2001 amendments removed the statutory mandate on which *Rorie* was based, we now hold that the trial courts have inherent authority to declare a case noncapital as a sanction for the State's violation of Rule 24.

However, our holding does not end the inquiry. Thus, we next address whether the facts presented justify declaring these cases noncapital. Because "[c]apital defendants do not stand to lose or gain any rights at the conference," *Chapman*, 342 N.C. at 339, 464 S.E.2d at 666, the defendant must demonstrate that the State's noncompliance caused sufficient prejudice to warrant declaring the case noncapital. If the defendant cannot make a sufficient showing of prejudice to warrant declaring the case noncapital, trial courts may still consider whether lesser sanctions are appropriate. *See Rorie*, 348

N.C. at 271-72, 500 S.E.2d at 80-81. Such lesser sanctions may be fashioned "both [to] get the district attorney's attention and eliminate any possible prejudice to defendant resulting from the district attorney's failure to petition for the required hearing within the time prescribed." *Id.* at 271, 500 S.E.2d at 80-81.

Here, defendant contends that the State's two and one-half year delay is so egregious and prejudicial that declaring the cases noncapital is appropriate. Defendant specifically claims that the delay prejudiced his ability to obtain effective assistance of second counsel and to acquire resources to prepare his capital defense. We conclude that defendant has not demonstrated that the State's noncompliance, while egregious, caused sufficient prejudice to warrant declaring the cases noncapital.

Defendant acknowledges that the Office of Indigent Defense Services ("IDS") rules allow second counsel to be appointed before the Rule 24 conference occurs in capital cases. *See* Indigent Def. Servs. R. 2A.2(d). Moreover, Rule 24 expressly states that it "does not affect the rights of the defense or the prosecution to request, or the court's authority to grant, any relief authorized by law, including but not limited to appointment of assistant counsel, in advance of the pretrial conference." Gen. R. Pract. Super. & Dist. Cts. 24. Nonetheless, defendant relies on IDS statistics to argue that appointment of second counsel before the Rule 24 conference is wasteful in the majority of cases that are charged capitally, but ultimately tried noncapitally. We agree that it was reasonable for defendant to wait until the cases were declared capital at the Rule 24 conference to request funding for second counsel, experts, and mitigation specialists to preserve resources. The lack of these resources, however, did not cause sufficient prejudice to declare the cases noncapital.

At the Rule 24 conference, the trial court expressly rejected defendant's prejudice arguments. Regarding the second counsel prong of his argument, the trial court stated: "Granted, it would have been helpful to have a second [counsel] at an earlier stage. But, as pointed out by State's counsel, the case[s are] not scheduled for trial in the near future. So I don't see any prejudice by not having a second chair appointed." Likewise, the trial court concluded that the lack of a mitigation specialist and investigator was not prejudicial because defendant also could have requested those resources before the Rule 24 conference. We agree with the trial court that there is insufficient prejudice to declare the cases noncapital because the date of trial is not imminent. Additionally, we note that trial courts may grant con-

tinuances when appropriate to give counsel time to become familiar with the case or to enable a defendant to acquire necessary witnesses. *See, e.g., State v. T.D.R.*, 347 N.C. 489, 503, 495 S.E.2d 700, 708 (1998); *State v. Roper*, 328 N.C. 337, 349-51, 402 S.E.2d 600, 607-08, *cert. denied*, 502 U.S. 902, 116 L. Ed. 2d 232 (1991). Accordingly, defendant's lack of second counsel, investigators, and mitigation specialists at an earlier juncture did not cause sufficient prejudice to warrant declaring the cases noncapital.

## III. Conclusion

The 2001 amendments to the capital sentencing statutes revoked the statutory mandate that provided the rationale for the *Rorie* decision. As a result, it is within the inherent authority of the trial court to enforce Rule 24 by declaring a case noncapital in appropriate circumstances. However, precluding a capital prosecution is an appropriate sanction only when the defendant makes a sufficient showing of prejudice resulting from the State's delay in holding the Rule 24 conference. Because defendant has not shown sufficient prejudice to warrant declaring the cases noncapital, we affirm the trial court's ruling on that basis.

MODIFIED AND AFFIRMED.

Justice NEWBY concurring in the result only.

I agree with the Court's holding that it would have been inappropriate in this case for the trial court to preclude the State from proceeding capitally as a sanction for noncompliance with Rule 24. However, I differ from the majority and would hold that declaring a case noncapital simply is not an appropriate means of enforcing Rule 24. By statute, the General Assembly has assigned to the Executive Branch the decision whether to seek the death penalty in first-degree murder cases with evidence of an aggravating circumstance.[4] In my view, a judicial decree that capital punishment is unavailable in such a case would deny the State its sole statutory discretion and thus violate the constitutional principle of separation of powers. I also be-

---

4. For practical reasons, district attorneys are placed within the "Judicial" article of the North Carolina Constitution. N.C. Const. art. IV, § 18(1). District attorneys' duties are set forth in conjunction with our constitution's provisions regarding prosecutorial districts, *id.*, which are pertinent to the Judicial Branch because they serve as the basis for our trial court districts. Notwithstanding this placement, district attorneys serve an executive function: they aid the Governor in "tak[ing] care that the laws be faithfully executed." N.C. Const. art. III, § 5(4).

lieve that preventing the prosecution of accused murderers to the full extent of the law would wrongly sanction the people of this state for the faults of a few officers of the Executive Branch.

The separation of governmental powers has been embedded in the foundational law of this state since our founders promulgated North Carolina's first constitution in 1776. N.C. Const. of 1776, Declaration of Rights IV ("That the legislative, executive, and supreme judicial powers of government, ought to be forever separate and distinct from each other."). The Court of Conference, this Court's predecessor, likewise recognized this essential precept from its earliest days. *Bayard v. Singleton,* 1 N.C. 15, 16, 1 N.C. 5, 6, 1 Mart. 48 (1787) (observing that our nation's founders formed a system of government "dividing the powers of government into separate and distinct branches, to wit: The legislative, the judicial, and executive, and assigning to each several and distinct powers, and prescribing their several limits and boundaries"). The explicit separation of powers has been preserved in this state despite numerous constitutional revisions, and Article I, Section 6 of the current North Carolina Constitution provides: "The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." Under this provision officers of one branch of government may not exercise the duties assigned to a coordinate branch or otherwise encroach upon those duties. *E.g., State ex rel. Wallace v. Bone,* 304 N.C. 591, 591-92, 595, 286 S.E.2d 79, 79-80, 81 (1982) (holding that members of the General Assembly could not concurrently serve on an Executive Branch commission without violating Article I, Section 6).

Our state constitution sets forth in general terms the responsibilities of district attorneys:

> The District Attorney shall advise the officers of justice in his district, *be responsible for the prosecution on behalf of the State of all criminal actions in the Superior Courts of his district,* perform such duties related to appeals therefrom as the Attorney General may require, *and perform such other duties as the General Assembly may prescribe.*

N.C. Const. art. IV, § 18(1) (emphases added). One natural incident of a district attorney's constitutional duty to prosecute criminal actions is choosing what punishment to seek. Moreover, one of the "other duties" specifically assigned to prosecutors by the General Assembly

is to decide whether to pursue the death penalty when trying a defendant charged with first-degree murder. Section 15A-2004 of our General Statutes, entitled "Prosecutorial discretion," provides:

> (a) *The State, in its discretion, may elect to try a defendant capitally or noncapitally for first degree murder,* even if evidence of an aggravating circumstance exists. The State may agree to accept a sentence of life imprisonment for a defendant at any point in the prosecution of a capital felony, even if evidence of an aggravating circumstance exists.

N.C.G.S. § 15A-2004(a) (2009) (emphasis added). Particularly in capital cases, the legislature has firmly delegated to prosecutors the decision of what punishment to seek. Without a specific grant of authority from the General Assembly, the courts do not have any inherent power to participate in or interfere with that decision. *E.g.*, *In re Greene*, 297 N.C. 305, 308-10, 255 S.E.2d 142, 144-45 (1979) (explaining that "[t]he power to define a crime and prescribe its punishment originates with the Legislative Branch" and that any judicial power to alter criminal punishments is not inherent in the judiciary, but must derive from a legislative grant of authority); *see also State v. Perry*, 316 N.C. 87, 101, 340 S.E.2d 450, 459 (1986) ("It is well settled that the General Assembly and not the judiciary determines the minimum and maximum punishment which may be imposed on those convicted of crimes. The legislature alone can prescribe the punishment for those crimes." (citations omitted)).

Pursuant to its authority under Article IV, Section 13(2) of the North Carolina Constitution, the General Assembly has granted this Court the prerogative to make procedural rules to govern the trial courts. However, those rules must not conflict with our General Statutes: "The Supreme Court is hereby authorized to prescribe rules of practice and procedure for the superior and district courts *supplementary to, and not inconsistent with, acts of the General Assembly.*" N.C.G.S. § 7A-34 (2009) (emphasis added). Just as our procedural rules must be in accordance with the General Statutes, so too must the methods by which we enforce those rules comport with the acts of the legislature. *State v. Rorie*, 348 N.C. 266, 270, 500 S.E.2d 77, 79-80 (1998) ("[E]nforcement of the Rules of Practice promulgated by this Court cannot be effected in a manner inconsistent with the Constitution or acts of the General Assembly.").

This Court has held in the past that when our constitution and statutes delegate discretion to prosecutorial officers, the courts can-

not prevent the exercise of that discretion without exceeding their authority. In *State v. Camacho*, we considered a trial court order that sought " 'to avoid even the possibility or impression of any conflict of interest' " by directing a district attorney's office to immediately withdraw from a criminal action and request the Attorney General's Office to represent the State in the case. 329 N.C. 589, 593, 406 S.E.2d 868, 870 (1991) (emphasis omitted). The order also directed the Attorney General's Office to " 'immediately assume the prosecution of the case.' " *Id.* This Court held that the trial court's directions to both the district attorney and the Attorney General were in excess of judicial authority. 329 N.C. at 594, 595, 406 S.E.2d at 871. In so holding, we noted that our constitution and statutes give the State's district attorneys "exclusive discretion" in deciding whether to request that the Special Prosecution Division take over the prosecution of a case. *Id.* at 594, 406 S.E.2d at 871. We likewise observed that "even upon a proper request and authorization by a District Attorney, the Special Prosecution Division is to participate in criminal prosecutions *only if* the Attorney General, in his *sole* discretion as an independent constitutional officer, approves." *Id.* at 595, 406 S.E.2d at 871. As was the case in *Camacho*, the discretion at issue here is vested solely in the State's prosecutors. N.C.G.S. § 15A-2004(a); *see also* N.C. Const. art. IV, § 18(1). Thus, in keeping with our analysis in *Camacho*, judicial interference with the decision whether to seek the death penalty in a first-degree murder case with evidence of an aggravating factor must be held to exceed the power of the courts.

As noted by the majority, North Carolina's capital punishment scheme once required prosecutors to seek the death penalty in all first-degree murder cases in which there was evidence of an aggravating circumstance. *E.g., Rorie*, 348 N.C. at 270-71, 500 S.E.2d at 80. In 2001 the General Assembly amended our capital punishment statutes to give prosecutors the discretion not to pursue the death penalty in such cases. Act of May 8, 2001, ch. 81, 2001 N.C. Sess. Laws 163 (codified at N.C.G.S. §§ 15A-2000(a), -2001, -2004 (2009)). The majority asserts these amendments abrogated *State v. Rorie*, in which this Court held that a trial court's order precluding the State from trying the defendant capitally for first-degree murder exceeded the trial court's authority to enforce Rule 24. 348 N.C. at 271, 500 S.E.2d at 80. Although *Rorie* was decided before the 2001 amendments, I do not believe this Court's reasoning in *Rorie* was wholly dependent on the pre-2001 requirement that prosecutors seek the death penalty.

In announcing its holding in *Rorie*, this Court stated:

> [T]he trial court's order is potentially in conflict with the mandate of the General Assembly in the capital sentencing statute and impermissibly impinges on the district attorney's obligation under the North Carolina Constitution to prosecute all criminal actions in the superior courts of his district. The order also impermissibly limits the right of the people to have defendant, if permitted by the evidence, prosecuted and punished to the full extent of the law for this most serious crime. *For these reasons* the sanction imposed for the district attorney's violation of a rule for the superior court promulgated by this Court pursuant to N.C.G.S. § 7A-34 exceeds the court's inherent authority to enforce the Rules of Practice, and the order cannot stand.

*Id.* (emphasis added). We thus gave three reasons for our holding. Because each of those reasons holds true in this case, I believe *Rorie* dictates the conclusion that declaring a case noncapital is not an appropriate means for a court to enforce Rule 24.

The first reason for our holding in *Rorie* was that "the trial court's order [was] potentially in conflict with the mandate of the General Assembly in the capital sentencing statute." *Id.* Although the General Assembly's mandate has changed since *Rorie* was decided, this concern is equally applicable in the instant case. The capital sentencing scheme now provides: "The State, in its discretion, may elect to try a defendant capitally or noncapitally for first degree murder, even if evidence of an aggravating circumstance exists." N.C.G.S. § 15A-2004(a). In other words, when there is evidence of an aggravating circumstance, the General Assembly has mandated that the prosecutor make a choice whether or not to pursue the death penalty. Under the majority opinion, even when there is evidence of an aggravating circumstance, the trial court has the power to preclude the prosecutor from making that choice. The majority's analysis is therefore "potentially in conflict with the mandate of the General Assembly in the capital sentencing statute." *Rorie*, 348 N.C. at 271, 500 S.E.2d at 80.

The second justification we gave for our holding in *Rorie* was that the trial court's order "impermissibly impinge[d] on the district attorney's obligation under the North Carolina Constitution to prosecute all criminal actions in the superior courts of his district." *Id.* As previously observed, the choice to pursue one of multiple potential punishments is concomitant with a district attorney's duty to

prosecute criminal actions under Article IV, Section 18(1) of our state constitution. Like the trial court's order in *Rorie*, a court order that effectively makes the choice of punishment for the prosecutor would "impermissibly impinge" on the district attorney's constitutional duty.

The third and final stated reason for our decision in *Rorie* was that the trial court's order "impermissibly limit[ed] the right of the people to have [the] defendant, if permitted by the evidence, prosecuted and punished to the full extent of the law for this most serious crime [of first-degree murder]." *Id.* The laws of our state include the death penalty as the most severe punishment for criminal offenses. In a first-degree murder case, when there is evidence of an aggravating circumstance (*i.e.*, "if permitted by the evidence"), N.C.G.S. § 15A-2004(a) requires the State to choose between proceeding capitally and proceeding noncapitally. Thus, in a first-degree murder case with evidence of an aggravating circumstance, there is at least a possibility that the State will seek imposition of capital punishment (*i.e.*, to prosecute and punish the defendant "to the full extent of the law"). However, a court order that deprives the State of the option of seeking the death penalty eliminates that possibility and thus limits the people's right to have the defendant prosecuted and punished as the law provides.

This right of the people is also relevant in another sense, one which this Court likewise recognized in *Rorie*. We observed in that case that "the people of the State, not the district attorney, are the party in a criminal prosecution." 348 N.C. at 270, 500 S.E.2d at 80 (citing N.C. Const. art. IV, § 13(1) ("Every action prosecuted by the people of the State as a party against a person charged with a public offense, for the punishment thereof, shall be termed a criminal action.") and *Simeon v. Hardin*, 339 N.C. 358, 368, 451 S.E.2d 858, 865 (1994)). Thus, the sanction of declaring a case noncapital is a sanction against the people of the state, not against the members of the district attorney's office who actually violated Rule 24. It is counterintuitive to punish the citizens of the State of North Carolina for the errors of a few individuals, both because this would be unfair to the people of the state and because it is unclear that a sanction against the people would effectively deter future misconduct by the district attorney's office. Presumably for these reasons, this Court stated in *Rorie*: "Repeated violations of [Rule 24] manifesting willful disregard for the fair and expeditious prosecution of capital cases may result in citation for contempt pursuant to N.C.G.S. § 5A-11(7) or

**STATE v. DEFOE**

[364 N.C. 29 (2010)]

other appropriate disciplinary action *against the district attorney*." 348 N.C. at 271-72, 500 S.E.2d at 81 (emphasis added); *see also State v. Matthews*, 358 N.C. 102, 110, 591 S.E.2d 535, 541 (2004) (stating in a first-degree murder case that "[i]f the prosecutor fails to petition the superior court for a [Rule 24] pretrial conference, *he* risks disciplinary action" (emphasis added)). The people of the state are no less the complaining party in a criminal action today than they were when *Rorie* was decided. Therefore, it remains appropriate to sanction the person or persons who have violated Rule 24 rather than all the citizens of the state.

Of course, I recognize that there are other instances of courts imposing sanctions on the state as a whole in response to wrongdoing by a few executive officers. For example, the Exclusionary Rule in criminal cases requires that when officers of the State have obtained evidence in violation of constitutional search and seizure protections, the State may not present that evidence at the defendant's trial. *E.g., Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L. Ed. 2d 1081, 1090 (1961).[5] However, the sanction of excluding evidence under such circumstances is utilized in part to protect specific rights of the defendant. *E.g., State v. Carter*, 322 N.C. 709, 716, 370 S.E.2d 553, 557 (1988) (observing that the Exclusionary Rule is a " 'remedy to protect society from the excesses which led to the constitutional right' " to be free of unreasonable search and seizure (quoting *Eleuteri v. Richman*, 26 N.J. 506, 512, 141 A.2d 46, 49, *cert. denied*, 358 U.S. 843, 79 S. Ct. 52, 3 L. Ed. 2d 77 (1958))); *see also State v. Buchanan*, 353 N.C. 332, 336-37, 543 S.E.2d 823, 826 (2001) (explaining that the *Miranda* warnings and accompanying rule of exclusion were "conceived to protect an individual's Fifth Amendment right against self-incrimination in the inherently compelling context of custodial interrogations by police officers" (citation omitted)). With respect to the Rule 24 pretrial conference, this Court has stated that "[c]apital defendants do not stand to lose or gain any rights at the conference." *State v. Chapman*, 342 N.C. 330, 339, 464 S.E.2d 661, 666 (1995), *cert. denied*, 518 U.S. 1023, 116 S. Ct. 2560, 135 L. Ed. 2d 1077 (1996). Because a delay in holding the Rule 24 conference does not deprive the defendant of any personal rights, it is out of keeping with standard judicial practice to punish such a

---

5. The Exclusionary Rule was actually adopted in North Carolina before the Supreme Court of the United States held the rule applicable to state courts in *Mapp. State v. Carter*, 322 N.C. 709, 713-14, 370 S.E.2d 553, 556 (1988). It is particularly noteworthy that the North Carolina rule was not originally adopted by judicial decision, but by legislative act. *Id.*

delay in a manner that is detrimental to all the people of the state and directly beneficial to the defendant.

The sanction of declaring a case noncapital for Rule 24 violations also differs from judicial devices that protect defendants' rights in that the sanction at issue here bears little nexus with the conduct sought to be deterred. The Exclusionary Rule, for instance, excludes the very evidence that the State procured in an unlawful manner and thus prevents the State from reaping any direct reward from its officers' misconduct. *See, e.g., Carter*, 322 N.C. at 716, 370 S.E.2d at 557 (observing that one of the reasons for the Exclusionary Rule " 'is that government should not stoop to the "dirty business" of a criminal in order to catch him' " (quoting *Eleuteri*, 26 N.J. at 512, 141 A.2d at 49)). In the Rule 24 context, however, the State's ability to seek the death penalty is not enhanced by a delay in holding the pretrial conference. Under N.C.G.S. § 15A-2004(a), the prosecutor has discretion to proceed capitally or noncapitally in a first-degree murder case as long as there is evidence of an aggravating factor. The timing of the Rule 24 conference has no effect on the existence of such evidence and, therefore, no effect on the prosecutor's discretion. Given the lack of a connection between the timing of the pretrial conference and the prosecutor's discretion in seeking the death penalty, it makes little sense to deprive the prosecutor of that discretion in response to a delay in complying with Rule 24.

The majority offers no explanation as to why the particular sanction of precluding the State from seeking the death penalty is an appropriate punishment for Rule 24 violations. Aside from observing the 2001 amendments to our capital sentencing scheme, the majority simply cites *State v. Seward*, in which we held that "if the prosecution's forecast of evidence at the Rule 24 conference does not show the existence of at least one aggravating circumstance, . . . the trial court may properly declare the case noncapital." 362 N.C. 210, 215, 657 S.E.2d 356, 359 (2008). However, a court's declaration that a first-degree murder case shall proceed noncapitally under *Seward* is not a sanction and has nothing to do with prosecutorial violations of Rule 24. A noncapital declaration under *Seward* is based on statutory provisions establishing that "a defendant may not receive a sentence of death in the absence of an aggravating circumstance." *Id.* (citing N.C.G.S. § 15A-2000(c) (2007)). In other words, we held in *Seward* that a prosecutor cannot choose between proceeding capitally and noncapitally as directed by N.C.G.S. § 15A-2004(a) unless the statutory condition precedent (namely, evidence of an aggravating cir-

cumstance) is satisfied. Nothing in *Seward* suggests that the noncapital declaration can be used as a sanction against the State.

I also note that the majority holds a noncapital declaration to be a proper sanction for violation of Rule 24 without clarifying the extent of the prosecutors' violation in this case. It is undisputed that the assistant district attorney's application for a Rule 24 pretrial conference was filed more than a month late. However, the quantum of the prosecution's further violation of Rule 24, if any, is unclear, not least because the rule itself seems to shift the burden of holding the pretrial conference to the superior court upon the district attorney's filing of an application. Gen. R. Pract. Super. & Dist. Cts. 24, 2009 Ann. R. N.C. 21 ("[T]he district attorney shall apply to the presiding superior court judge or other superior court judge holding court in the district, who shall enter an order requiring the prosecution and defense counsel to appear before the court within forty-five days thereafter for the pretrial conference."). In *Rorie* we stated: "*Repeated violations* of [Rule 24] *manifesting willful disregard for the fair and expeditious prosecution of capital cases* may result in citation for contempt pursuant to N.C.G.S. § 5A-11(7) or other appropriate disciplinary action against the district attorney." 348 N.C. at 271-72, 500 S.E.2d at 81 (emphases added). The majority has not clearly established that the prosecutors crossed the threshold we set forth in *Rorie* for imposing sanctions against the district attorney, let alone the presumably higher threshold that would be needed to justify sanctioning the people of the state.

The General Assembly has delegated to the Executive Branch exclusive authority to decide whether to seek the death penalty in first-degree murder cases with evidence of an aggravating circumstance. I do not believe our judiciary can strip prosecutors of that discretion without violating the separation of governmental powers that has been a fixture of North Carolina constitutional law for well over two hundred years. Moreover, preventing the prosecution of criminal defendants to the full extent of the law wrongly punishes the people of this state for the errors of a few government officials. I would hold that the courts may not enforce Rule 24 by precluding the State from seeking the death penalty. I therefore concur only in the result of the majority's opinion.

Justice BRADY joins in this concurring opinion.