STATE OF NORTH CAROLINA v. NATHAN DARNELL WILLIAMSON

No. COA09-1475

(Filed 7 September 2010)

## 1. Robbery— inoperable gun—instruction—not given

Defendant was not entitled to an instruction on common law robbery or to the dismissal of two counts of robbery with a dangerous weapon where the jury was not presented with evidence that his gun was unloaded or inoperable.

## 2. Criminal Law— motion for appropriate relief—newly discovered evidence—truthfulness—burden not met

The trial court correctly determined that a defendant making a motion for appropriate relief did not meet his burden of proof in establishing that newly discovered evidence was probably true. The issue largely turned upon the credibility of a witness; such questions were best left for the trial court.

## 3. Criminal Law— motion for appropriate relief—newly discovered evidence—due diligence—burden not met

A defendant making a motion for appropriate relief based on newly discovered evidence did not establish due diligence where the State had placed a witness's statement in the courthouse mailbox of defendant's attorney the day before trial, defense counsel did not check his mailbox until the trial was over, and defense counsel independently interviewed the witness without asking the key question.

## 4. Criminal Law— motion for appropriate relief—newly discovered evidence—findings and conclusions—not written

The trial court did not err by failing to enter a written order containing its findings of fact and conclusions of law when it denied defendant's motion for appropriate relief. Neither statute nor precedent required written findings or conclusions, and there was no reason that oral findings and conclusions would frustrate appellate review.

Judge WYNN dissenting prior to 10 August 2010.

STATE v. WILLIAMSON

[206 N.C. App. 599 (2010)]

Appeal by defendant from judgment entered 6 May 2009 and order entered 17 June 2009 by Judge William Z. Wood, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 27 April 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General Sharon Patrick-Wilson, for the State.*

*Christy E. Wilhelm, for defendant-appellant.*

CALABRIA, Judge.

Nathan Darnell Williamson ("defendant") appeals from (1) a judgment entered upon a jury verdict finding him guilty of two counts of robbery with a dangerous weapon and (2) the trial court's denial of defendant's post-trial motion for appropriate relief ("MAR"). We find no error at trial and affirm the trial court's denial of defendant's MAR.

## I. Background

On 13 June 2009, defendant and Dorsey Lemon ("Lemon") entered T&B Amusements ("T&B") in Winston-Salem, North Carolina. Upon entering, Lemon struck employee Cecil Sanderlin ("Sanderlin") in the head with a black semiautomatic pistol. Lemon then cocked the gun in Sanderlin's face and announced, "this is a robbery." During the course of the robbery, defendant and Lemon took between five and seven hundred dollars and a radio belonging to T&B employee Ann Cheek. Once the robbery was completed, Lemon returned the gun to its owner, Jabriel Bailey, who was acting as a lookout during the robbery. The gun was never recovered by police.

Detective Phillip Cox ("Det. Cox") of the Winston-Salem Police Department was assigned to investigate the robbery. Witnesses interviewed by Det. Cox identified defendant as a participant in the robbery. Based upon this identification, Det. Cox located defendant, who voluntarily agreed to provide a statement to him. In his statement, defendant admitted his involvement in the robbery. Defendant additionally told Det. Cox that Lemon carried the gun during the robbery and that Jabriel Bailey and Donte Crews were the lookouts.

Defendant was subsequently arrested and indicted for two counts of robbery with a dangerous weapon and one count of conspiracy to commit robbery with a dangerous weapon. Defendant's jury trial in Forsyth County Superior Court began on 5 May 2009, in the afternoon. At the close of the State's evidence, defendant made a motion to dismiss all charges. The trial court allowed the motion to dismiss

STATE v. WILLIAMSON

[206 N.C. App. 599 (2010)]

for the one count of conspiracy to commit robbery with a dangerous weapon but denied the motion for the two counts of robbery with a dangerous weapon. Defendant did not present any evidence.

At the charge conference, defendant's counsel requested a jury instruction on common law robbery, contending that the State failed to prove that the gun used was actually an operational weapon. The trial court refused defendant's request.

On 6 May 2009, the jury returned a verdict finding defendant guilty of two counts of robbery with a dangerous weapon. These convictions were consolidated and defendant was sentenced to a minimum of 45 months to a maximum of 63 months in the North Carolina Department of Correction.

Following his conviction, defendant filed an MAR on 18 May 2009, based upon allegedly new evidence. In the MAR, defendant asserted that on 4 May 2009, the State obtained a statement from Lemon that the handgun he used in the robbery was inoperable and unloaded, and that defendant's counsel, Michael Archenbronn, was not made aware of that statement until after defendant had been convicted and sentenced.

On 17 June 2009, the trial court conducted a hearing on defendant's MAR. At the hearing, it was established that after obtaining Lemon's statement that the gun used in the robbery was inoperable, the State placed a one-page report documenting Lemon's statement in defendant's counsel's mailbox located in the courthouse. Defendant's counsel did not check his mailbox either in the late afternoon on 4 May or at any time on 5 May. As a result, defendant's counsel did not obtain the State's report until after defendant had been convicted on 6 May 2009. However, defendant's counsel conceded that he had independently interviewed Lemon during the evening of the first day of trial, 5 May 2009.

Lemon testified at the hearing that the gun he used during the robbery was unloaded and missing a firing pin, making it inoperable. Lemon stated that he had not previously mentioned that the gun was inoperable "[b]ecause I robbed somebody and I had a gun. I didn't know— I didn't know the law, that even if it was broken, it could have been broken down to common law. I didn't know that. You know what I'm saying?" Defendant's counsel told the trial court that when he interviewed Lemon on 5 May, Lemon never mentioned that the gun was inoperable. Defendant's counsel also told the trial court that if he

had been aware of the information sooner, he would have called Lemon to testify at defendant's trial. The trial court denied defendant's MAR in open court. Defendant appeals.

## II. Errors During Trial

**[1]** Defendant appeals, in part, from alleged errors during his trial. Specifically, defendant argues that the trial court erred by failing to instruct the jury on the lesser included offense of common law robbery and by denying defendant's motion to dismiss the robbery with a dangerous weapon charges. However, both arguments are essentially premised upon the evidence obtained after the trial tending to show that the gun was inoperable.

In *State v. Joyner,* our Supreme Court held that "where there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon *and nothing to the contrary appears in evidence,* the presumption that the victim's life was endangered or threatened is mandatory." 312 N.C. 779, 782, 324 S.E.2d 841, 844 (1985). Defendant acknowledges that the jury was presented with no evidence at his trial that the gun was inoperable or unloaded. Since defendant presented no evidence at trial to rebut the presumption that the firearm used in the robbery was functioning properly, he was not entitled to either an instruction on common law robbery or dismissal of the two counts of robbery with a dangerous weapon. Defendant's arguments regarding errors during his trial are overruled.

## III. Motion for Appropriate Relief

Defendant argues that the trial court erred by denying his MAR. We disagree.

### A. Standard of Review

Upon review of the denial of a defendant's MAR, "this Court is bound by the trial court's findings of fact if they are supported by any competent evidence, and 'the trial court's ruling on the facts may be disturbed only when there has been a manifest abuse of discretion, or when it is based on an error of law.' " *State v. Doisey,* 138 N.C. App. 620, 627, 532 S.E.2d 240, 245 (2000) (quoting *State v. Harding,* 110 N.C. App. 155, 165, 429 S.E.2d 416, 423 (1993)).[1] To prevail on an MAR

---

1. The cases from our Courts involving a motion for appropriate relief exhibit different and conflicting standards of review. *Compare State v. Stevens,* 305 N.C. 712,

on the basis of newly discovered evidence, a defendant must establish the following factors:

> (1) that the witness or witnesses will give newly discovered evidence, (2) that such newly discovered evidence is probably true, (3) that it is competent, material and relevant, (4) that due diligence was used and proper means were employed to procure the testimony at the trial, (5) that the newly discovered evidence is not merely cumulative, (6) that it does not tend only to contradict a former witness or to impeach or discredit him, (7) that it is of such a nature as to show that on another trial a different result will probably be reached and that the right will prevail.

*Stukes*, 153 N.C. App. at 773, 571 S.E.2d at 244 (citing N.C. Gen. Stat. § 15A-1415(c) (2001) and *State v. Britt*, 320 N.C. 705, 712-13, 360 S.E.2d 660, 664 (1987) *(superceded by statute on other grounds, as stated in State v. Defoe*, 364 N.C. 29, 35, 691 S.E.2d 1, 4 (2010)). At an MAR hearing, the defendant has the burden of establishing each of the facts essential to his claim by a preponderance of the evidence. N.C. Gen. Stat. § 15A-1420(c)(5) (2009).

In the instant case, the trial court determined that defendant did not provide sufficient evidence to establish three factors: (1) the second factor—that the evidence is probably true; (2) the fourth factor—that due diligence was used to procure the testimony at the trial; and (3) the seventh factor—that the evidence was of such a nature that a different result would probably have been reached on another trial.

## B. Whether the Newly Discovered Evidence was Probably True

[2] Defendant was required to show that the newly discovered evidence was probably true. *Britt*, 320 N.C. at 713, 360 S.E.2d at 664. As the dissent acknowledges, it is for the trial court to assess the credibility of a witness. *State v. Garner*, 136 N.C. App. 1, 14, 523 S.E.2d 689, 698 (1999). However, the dissent argues that it was error to find that the evidence was probably not true when the evidence was uncontradicted at the hearing.[2]

In the instant case, Lemon made a statement to Det. Cox that the gun was inoperable and not loaded on 4 May 2009. This was appar-

---

720, 291 S.E.2d 585, 591 (1982) ("whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court"), *with State v. Stukes*, 153 N.C. App. 770, 773, 571 S.E.2d 241, 244 (2002) (abuse of discretion)

2. Defendant's brief does not make this argument.

ently the first time that he made that assertion, even though he had previously been charged with and pled guilty to robbery with a dangerous weapon for his conduct during the robbery. Lemon reiterated his assertion at the MAR hearing.

The evidence presented at the MAR hearing was far from being uncontradicted. Lemon had made an earlier statement to police and was interviewed by defendant's counsel during defendant's trial and made no mention of the gun being inoperable. Some of Lemon's testimony at the MAR hearing was as follows:

Q. Did you ever tell your attorney that the gun you had that day didn't work?

A. I believe I did, man, but I don't even remember who the attorney was. All he was telling me was that this robbery with a dangerous weapon was the best plea I had, that I need to take that.

And I said, "I did the crime. Give me my time. I'm going to go on and get it over with and get this behind me."

. . .

Q. So it's your testimony today that you in fact told your attorney, who—was it Ron Short? Does that name ring a bell to you?

A. I don't—I don't remember who he was. I don't—man, I don't remember nothing about what I told him, man.

Q. You don't remember if you told him that the gun was inoperable?

A. No, I ain't even going to say I was, because I don't even remember who this guy was.

Q. You don't think that would have been an important fact to point out to your attorney?

A. Man, I was just ready to get it over with, Sipprell.

Q. So you pled guilty to robbery with a dangerous weapon?

A. Because I robbed somebody and I had a gun. I didn't know—I didn't know the law, that even if it was broken, it could have been broken down to common law. I didn't know that. You know what I'm saying? I just—

. . .

Q. So now Jabriel was telling you that it was not—

A. Well, see, he showed me while he was telling me, no firing pin and no bullets.

Q. So Jabriel told you that when he gave you the gun.

A. Yeah, and I saw with my own eyes.

Q. And you didn't pass any of that information on to the police detectives in what you told them in that interview, did you?

A. And it don't look like I told them that the gun was broke, but I told them I got the gun from Jabriel.

Q. But you didn't tell that he told you it was—had no firing pin or that it was unloaded.

A. Yeah.

Q. You apparently didn't tell your attorney—

A. I didn't even tell them that the gun was broken.

Q. And you didn't tell your attorney that information, did you?

A. I mean, it doesn't say that in here, man.

. . .

Q. Right. And before—let me try and clear up something. I'm getting a little confused here. Before that last meeting, do you recall ever mentioning to anybody, law enforcement, prosecutor, anyone else, the government, that the gun did not work and was unloaded, that it was missing a firing pin and was unloaded?

A. I don't really remember if—

. . .

THE COURT: Okay. What kind of gun was it? Do you know?

THE WITNESS: I don't know what type it was or nothing like that. I don't remember. It was—it might have been in here.

THE COURT: Might have been what?

THE WITNESS: It might be in this statement.

THE COURT: Okay. I didn't see it. I was just wondering if you remember what kind of gun it was.

THE WITNESS: Nah. Nah. This all is just—I'm ready to go home, man. Are you going to let me go home?

The trial court stated that he could not find that the evidence was probably true. In doing so, he commented upon the demeanor of Lemon: "From Mr. Lemon's demeanor on the stand, Mr. Archenbronn, I can sure understand why you didn't call him as a witness after you interviewed him on the evening of, what, the 5th, or the 6th?" The combination of Lemon's prior statements, his refusal to answer whether he discussed the operability of the gun with his attorney, and his own plea of guilty to armed robbery demonstrate that his testimony that the gun was not operable was not uncontroverted.

The dissent correctly states that "[o]ur Courts have accordingly upheld the trial court's ruling on whether the probably true factor is met *when there is conflicting evidence upon which to make such a determination.*" (Emphasis in original). It goes on to assert that there was "no conflicting evidence regarding the condition of the gun." This is simply incorrect. Lemon's testimony, prior statements, and conduct were rife with contradictions. His prior statements failed to mention the inoperability of the gun. He also failed to mention the gun's inoperability when interviewed by defendant's counsel *during the trial* of the defendant. Even more disturbing and inexplicable is that Lemon apparently failed to mention that the gun was inoperable to his own counsel, and pled guilty to robbery with a dangerous weapon. As a result, we cannot say that the evidence was not uncontroverted at the MAR hearing.

Under these circumstances, we must defer to the trial court, who actually observed Lemon testify, as to whether the defendant met his burden of proof to establish the second factor of the *Britt* test. In the instant case, this issue largely turns upon the credibility of Mr. Lemon as a witness. Such questions are best left for the trial court, and not the appellate court. *See Garner*, 136 N.C. App. at 14, 523 S.E.2d at 698.

Under the dissent's analysis, any evidence presented, however incredible, would be sufficient, if uncontradicted, to satisfy the "newly discovered evidence" factor as set forth in *Britt*. We do not believe this to be the law. Evidence sufficient to establish a fact by the preponderance of the evidence pursuant to N.C. Gen. Stat. § 15A-1420(c)(5) must be credible evidence.

Finally, the dissent cites the case of *State v. Allen*, 317 N.C. 119, 124, 343 S.E.2d 893, 897 (1986) for the proposition that if there is some evidence that the firearm used in a robbery was not a dangerous weapon, it is for the jury to decide whether the firearm was a dangerous weapon. This proposition, while inherently correct in the con-

STATE v. WILLIAMSON

[206 N.C. App. 599 (2010)]

text of whether a judge should instruct the jury on the lesser offense of common law robbery in a trial, has no applicability in the current MAR proceeding. The issue before this Court is whether the defendant met his burden of proof in establishing that the "newly discovered evidence" was probably true. The trial court correctly determined that defendant failed to meet this burden.

## C. Due Diligence

**[3]** Defendant was required to show that "due diligence was used and proper means were employed to procure the testimony at the trial." *Britt*, 320 N.C. at 713, 360 S.E.2d at 664. In finding that defendant failed to do so, the trial court noted that Lemon did not mention in his 5 May interview with defendant's counsel that the gun was inoperable and unloaded. The trial court also noted that defendant's counsel did not see the notice that was put in his mailbox on 4 May until after defendant was convicted. The trial court concluded that it could not find that defendant's counsel had exercised due diligence.

According to the testimony at the MAR hearing, the State interviewed Lemon on 4 May 2009 at approximately 11:05 p.m. The State represented to the trial court that at some point on the afternoon of 4 May 2009, a legal assistant left a one-page report in defendant's counsel's mailbox at the courthouse which read: "Dorsey Lemon said that the gun he had during the robbery did not work and was not loaded." The bottom of that report contained a Certificate of Service, which stated:

I certify that I served a copy of this motion by:

_____ delivering a copy personally to _____, attorney for defendant, or

_____ placing a copy in the mail to _____, or

_____ leaving a copy with the receptionist at the office of the attorney for the defendant,

__X__ placing a copy in the defense attorney's mailbox maintained by the Clerk of Superior Court.

The report was filed and date stamped 3:12 p.m. on 4 May 2009. Defendant's counsel stated at the MAR hearing that he had checked his mailbox earlier on 4 May, but did not check it again later that day.

The next day, 5 May 2009, defendant's trial began shortly after 12:00 p.m. Prospective jurors were brought in and given initial instructions at 12:18 p.m. Jury selection commenced at 12:25 p.m. At 12:41 p.m., the court went into recess for lunch until 2:03 p.m. Defendant's counsel did not check his courtroom mailbox during the morning of 5 May or during the lunch recess.

After the court went into the evening recess on 5 May, defendant's counsel interviewed Lemon. Defendant's counsel told the trial court about this interview at the MAR hearing:

> Now, I will tell the court also what happened that—that evening, on Tuesday—Tuesday, on the 5th. I did actually meet with Mr. Dorsey Lemon. When I found out he was a witness, I went down to the jail and just basically said, you know, "Tell me what happened. I just want to hear the truth, and explain to me what you"—asked him if he spoke to the government. He said yes, he had talked to them. I just said, "Tell me what happened."
>
> . . .
>
> And he began to tell me what happened. Based upon what he told me, I concluded that he may not be the best witness for us. And I explained to [defendant], and we agreed that based upon how we were going to—our strategy conducting the trial, it wouldn't be probably the best to have him testify.
>
> However, Mr. Lemon never mentioned to me about the gun being inoperable.

This statement clearly indicates that defendant had access and opportunity to interview Lemon before defendant's trial was completed. Because Lemon had already made the statement about the inoperable nature of the gun to the State, a reasonable interview by defendant's counsel should have revealed this same information to defendant.

The dissent goes to considerable lengths to attack both the State's method of service of Lemon's statement and the State's supposed failure to mention the statement to defendant's counsel during the course of the trial. The dissent is particularly troubled by the following argument, made by the State during the charge conference:

> I think there is absolutely no evidence of anything other than robbery with a dangerous weapon in this case. There's no evidence that it was inoperable, no evidence that it was unloaded.

> The only evidence we have is that there was a gun displayed and they felt threatened and scared by that. I think there's no grounds for a common law instruction.

However, it is clear that this statement was made in reference to the evidence presented *during the course of defendant's trial*. As previously noted, defendant has conceded that there was no evidence presented at trial that the gun used during the robbery was inoperable, and the State's argument during the charge conference was consistent with that fact.

Additionally, neither the dissent, defendant's brief, nor defendant's counsel at the MAR hearing argue that placing the statement in defendant's counsel's mailbox was an invalid method of service. Rather, the argument put forth is that the delivery of the statement to defendant's counsel's mailbox was not the ideal form of service. As defendant's counsel argued at the MAR hearing:

> Your Honor, as I mentioned, it's true Mr. Sipprell—the government did leave—or his assistant did leave this notice in my box on May 4th. There's no contest that there was. I see it was date-stamped around 3:12.

> I'm not trying to say the government was hiding the ball on me, but I was with the government for three days—two days after that and it was never hand-delivered to me.

Defendant's counsel conceded that the State provided defendant with written notice of Lemon's statement within hours after the information was received by the State. Defendant's counsel had multiple opportunities to check his courthouse mailbox after Lemon's statement was delivered, but simply failed to do so. The dissent seeks to shift the blame for this to the State, but the State is not required to ensure that defendant's counsel actually received and reviewed information that was properly served upon him.

The evidence presented at defendant's MAR hearing fully supports the trial court's determination that defendant failed to establish the exercise of due diligence in procuring Lemon's statement. Lemon's statement was placed in the courthouse mailbox of defendant's counsel on 4 May 2009. Defendant's counsel failed to check his mailbox at the end of the day on 4 May and in the morning and during the lunch recess on 5 May. Most importantly, defendant's counsel independently interviewed Lemon on 5 May, *after Lemon had given the statement at issue to the State*. These facts were sufficient for the trial

court to conclude that defendant's counsel had not exercised due diligence in discovering the evidence provided by Lemon's statement.

Since defendant failed to establish at least two of the factors set forth in *Britt,* the trial court properly denied defendant's motion for appropriate relief. 320 N.C. at 712-13; 360 S.E.2d at 664. This assignment of error is overruled.

### IV. The Trial Court's Oral Order

**[4]** Defendant argues that the trial court erred by failing to enter a written order containing its findings of fact and conclusions of law when it denied defendant's MAR. We disagree.

The procedural aspects of MAR proceedings are governed by N.C. Gen. Stat. § 15A-1420(c) (2009). The portions of that statute relevant to the proceedings in the instant case are as follows:

> (1)  Any party is entitled to a hearing on questions of law or fact arising from the motion and any supporting or opposing information presented unless the court determines that the motion is without merit. The court must determine, on the basis of these materials and the requirements of this subsection, whether an evidentiary hearing is required to resolve questions of fact.
>
> . . .
>
> (4)  If the court cannot rule upon the motion without the hearing of evidence, it must conduct a hearing for the taking of evidence, and must make findings of fact. The defendant has a right to be present at the evidentiary hearing and to be represented by counsel. A waiver of the right to be present must be in writing.
>
> (5)  If an evidentiary hearing is held, the moving party has the burden of proving by a preponderance of the evidence every fact essential to support the motion.
>
> (6)  A defendant who seeks relief by motion for appropriate relief must show the existence of the asserted ground for relief. Relief must be denied unless prejudice appears, in accordance with G.S. 15A-1443.
>
> (7)  The court must rule upon the motion and enter its order accordingly. When the motion is based upon an asserted violation of the rights of the defendant under the Constitution or laws or treaties of the United States, the court must make and enter conclusions of law and a statement of the reasons for its

determination to the extent required, when taken with other records and transcripts in the case, to indicate whether the defendant has had a full and fair hearing on the merits of the grounds so asserted.

N.C. Gen. Stat. § 15A-1420(c) (2009).

Both defendant and the dissent rely primarily upon *State v. McHone*, 348 N.C. 254, 499 S.E.2d 761 (1998) to support their contention that the trial court in MAR proceedings is required to make written findings of fact and conclusions of law. In *McHone*, the defendant appealed the trial court's summary denial, without a hearing, of his MAR. *Id.* at 256, 499 S.E.2d at 762. In his first argument, the defendant argued that because he asserted specific errors of constitutional law, he was entitled to a hearing on his MAR. *Id.* Our Supreme Court was unpersuaded by this argument, rejecting defendant's argument with, *inter alia*, the following analysis:

> N.C.G.S. § 15A-1420 provides that "[a]ny party is entitled to a hearing on questions of law or fact . . . *unless* the court determines that the motion is without merit." N.C.G.S. § 15A-1420(c)(1) (1997) (emphasis added). Subsection (c)(7) of the statute also provides that if a defendant asserts with specificity in his motion for appropriate relief that his conviction was obtained in violation of the Constitution of the United States, the defendant is entitled to have the trial court make conclusions of law and state its reasons before denying the motion. N.C.G.S. § 15A-1420(c)(7). However, we do not read subsection (c)(7) as an expansion either of defendant's right to be heard or his right to present evidence. Instead, this provision is merely a directive to the trial court to make written conclusions of law and to give its legal reasoning for entering its order, such that its ruling can be subjected to meaningful appellate review. Therefore, summary denial without conclusions and a statement of the trial court's reasoning is not proper where the defendant bases his motion upon an asserted violation of his constitutional rights.

*Id.* at 256-57, 499 S.E.2d at 762. After conducting further analysis of various portions of N.C. Gen. Stat. § 15A-1420(c), the *McHone* Court determined that the "[d]efendant's contention that he was entitled to a hearing and entitled to present evidence simply because his motion for appropriate relief was based in part upon asserted denials of his rights under the Constitution of the United States [was] without merit." *Id.* at 258, 499 S.E.2d at 763.

The dissent interprets the *McHone* Court's passing reference to the trial court's apparent directive to "make written conclusions of law and to give its legal reasoning for entering its order, such that its ruling can be subjected to meaningful appellate review" as creating binding precedent that requires written findings of fact and conclusions of law whenever the trial court enters an order regarding a defendant's MAR. Because the only question before the *McHone* Court was whether the defendant was entitled to an evidentiary hearing, we treat the *McHone* Court's statements regarding the nature of an order denying a defendant's MAR as dicta.

> [T]he doctrine of the law of the case contemplates only such points as are actually presented and necessarily involved in determining the case. The doctrine does not apply to what is said by the reviewing court, or by the writing justice, on points arising outside of the case and not embodied in the determination made by the court. Such expressions are *obiter dicta* and ordinarily do not become precedents in the sense of settling the law of the case.

*Hayes v. Wilmington*, 243 N.C. 525, 536, 91 S.E.2d 673, 682 (1956). "In every case what is actually decided is the law applicable to the particular facts; all other legal conclusions therein are but *obiter dicta*." *Id.* (internal quotations and citation omitted).

As previously noted, the *McHone* Court was not called upon to determine whether a trial court could deny a defendant's MAR with either oral or written findings of fact and conclusions of law; in fact, there were no questions regarding the trial court's order presented whatsoever. The questions before the *McHone* Court dealt strictly with whether a hearing was required at all. As a result, the *McHone* Court's reference to written conclusions of law did not create binding precedent on how to interpret the portion of N.C. Gen. Stat. § 15A-1420(c) directing the trial court to make findings of fact and conclusions of law.

Turning to the statute itself, we note, as does the dissent, that the statute makes *no reference to* "written" findings of fact or "written" conclusions of law. We decline to judicially create such a requirement, as it is a well-known rule of statutory construction that "[w]hen the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning." *State v. Jones*, 358 N.C. 473, 477, 598 S.E.2d 125, 128 (2004) (internal quotations and citation omitted).

**STATE v. WILLIAMSON**

[206 N.C. App. 599 (2010)]

Moreover, there is no reason why oral findings of fact and conclusions of law would frustrate our ability to conduct appellate review of the order. In the instant case, the trial court's order denying defendant's MAR appears in the transcript as follows:

THE COURT: Okay. Well, first of all, I'll find the gun is not available. Mr. Jiraud Bailey, according to both the—Mr. Lemon's statement and the defendant, Mr. Williamson's statement, Mr. Jiraud Bailey got the gun back from Mr. Lemon during—right at the end of the robbery or shortly after it was over.

. . .

I'm going to find the defendant made the two statements that were introduced as A and B, and Mr. Lemon made the statement to police that were C; that during none of those three statements was there any mention of the gun being inoperable or not having a firing pin or being unloaded.

Certainly, from what I've heard—and then I'll further find that the gun was returned—brought to the scene by Mr. Bailey, Jabriel Bailey, and was returned to Jabriel Bailey by Mr. Lemon shortly after the robbery; that Mr. Lemon did hold the gun during the robbery.

That the defendant's role in the robbery was basically to get Mr. Lemon inside the door of the Joker Poker parlor, I guess you would say, or poker-machine parlor that was robbed, because the defendant's mother had played poker there before.

Going on, though, as to the first point, one, the witness will give newly discovered evidence, yeah, I think that's newly—new evidence. It was not mentioned anytime before the 4th of May of nineteen—of 2009, so as of May 4th 2009, it was newly discovered evidence.

Two, the newly discovered evidence is probably true. I cannot find that this evidence is probably true.

From Mr. Lemon's demeanor on the stand, Mr. Archenbronn, I can sure understand why you didn't call him as a witness after you interviewed him on the evening of, what, the 5th, or the 6th?

. . .

Okay. Second, that the newly discovered evidence is competent, material, and relevant. It is certainly—whether or not the gun was

loaded or whether or not Mr. Lemon says the gun was loaded was competent, material, and relevant.

That due diligence was used and proper means were employed to procure the testimony at trial.

Well, Mr. Archenbronn, you interviewed Mr. Lemon on the evening of—during the middle of the trial on the evening of the 5th. Is that right?

MR. ARCHENBRONN: That is correct, Your Honor. I did.

THE COURT: Yeah. And I don't know what was said during the interview, but Mr. Lemon didn't mention to you that the gun was inoperable and unloaded, so—I mean, you did what you should do in interviewing Mr. Lemon.

As to whether you should have asked that question or not, I don't—you know, you hadn't seen the notice dated the 4th of May that was put in your box on the 4th of May. So I can't find that due diligence was used.

I will find the newly discovered evidence is not merely cumulative. The newly discovered evidence does not tend only to contradict a former witness or to impeach or discredit witnesses.

And I cannot find that the newly discovered evidence is of such a nature as to show that on another trial a different result would probably be reached—or will probably be reached and that the right will prevail.

And considering this, I do consider the fact that your client made two statements that were totally admissible, Mr. Archenbronn. I think when you look at the balance, those two statements were so overwhelming that any mistake in not putting this evidence in was probably harmless.

So, one, I don't think that Mr. Lemon is—the newly discovered evidence from Mr. Lemon is probably true.

And, two, I don't believe it would result in a new trial, and I'm not—I don't believe that you've shown that due diligence was used when you got it in your box on 5/4 and interviewed him on 5/5.

While our review of this order would be improved by having the trial court's order reduced to a written order in the record on appeal, it is difficult to discern how it makes meaningful appellate review of

STATE v. WILLIAMSON

[206 N.C. App. 599 (2010)]

the order impossible. The dissent asserts that the lack of a written order somehow frustrates our review, but it provides no reason for why this is so. Indeed, the dissent discusses the trial court's findings extensively in its analysis of the trial court's denial of defendant's MAR.

The plain language of N.C. Gen. Stat. § 15A-1420(c) contains no reference to written findings, and the absence of a written order does not frustrate our review of the trial court's denial of defendant's MAR, as the transcript contains the findings and conclusions the trial court orally made in open court. Consequently, we hold that while the best practice is for the trial court to enter a written order containing its findings of fact and conclusions of law, the trial court is not required to make written findings of fact or conclusions of law when it enters an order on a defendant's MAR. This assignment of error is overruled.

## V. Conclusion

Because there was no evidence presented during defendant's trial that the gun used during the robbery of T&B was inoperable, defendant was not entitled to either a jury instruction on common law robbery or dismissal of the robbery charges. Thus, defendant received a fair trial, free from error. Because defendant's counsel failed to establish (1) that the newly discovered evidence was probably true, and (2) that he exercised due diligence in discovering Lemon's statement, the trial court properly denied defendant's MAR. While it is the best practice for the trial court to enter a written order with its findings of fact and conclusions of law when ruling on a defendant's MAR, this practice is not required by the MAR statute. Consequently, the order of the trial court denying defendant's MAR is affirmed.

No error at trial.

Affirmed.

Judge STEELMAN concurs.

Judge WYNN dissents by separate opinion.

Judge WYNN dissented prior to 10 August 2010.

WYNN, Judge, dissenting.

I agree with the majority that Defendant's trial was free of prejudicial error, *based on the evidence there presented*. Insofar as the majority implicitly recognizes that Defendant was entitled to an instruction on common law robbery, *based on evidence existing at the time of his trial*, I agree also with that conclusion. *See State v. Joyner*, 312 N.C. 779, 784, 324 S.E.2d 841, 845 (1985) (common law robbery instruction required when there was evidence rifle used during robbery was unloaded and missing firing pin). I disagree, however, that the trial court did not err in denying Defendant's Motion for Appropriate Relief ("MAR"). I disagree also that N.C. Gen. Stat. § 15A-1420 does not require the trial court to enter a written order ruling upon Defendant's MAR.

Defendant was tried and convicted for armed robbery based on his admitted involvement in the 13 June 2009 robbery of T&B Amusements in Winston Salem. Defendant's accomplice in the robbery, Dorsey Lemon, carried the gun that elevated this crime from common law robbery to robbery *with a dangerous weapon*. The gun used was never recovered. The day before Defendant's trial, prosecutors interviewed Lemon and learned that the gun he carried during the robbery was unloaded and inoperable.

The prosecutor created a report detailing Lemon's statement and left it in Defense counsel's mailbox at the courthouse the afternoon before Defendant's trial. Defense counsel interviewed Lemon during a recess after the first day of trial, but Lemon did not tell Defense counsel what he had told the prosecutor regarding the gun. Based on the information he learned from Lemon, the prosecutor chose not to call him at trial. Instead he stated to the trial court:

> I think there is absolutely no evidence of anything other than robbery with a dangerous weapon in this case. There's no evidence that it was inoperable, no evidence that it was unloaded. The only evidence we have is that there was a gun displayed and they felt threatened and scared by that. I think there's no grounds for a common law instruction.

Defense counsel did not discover the report until after Defendant had been convicted. Defendant filed an MAR alleging that he was entitled to a new trial on the basis of new evidence. The trial court denied the motion.

On appeal, Defendant argues that the trial court erred by (I) denying his motion to dismiss the charges; (II) denying his request for an

instruction on common law robbery; (III) denying his MAR; and (IV) failing to file a written order with findings of fact and conclusions of law.

## I & II

As the majority recognizes, Defendant's arguments regarding errors at his trial rest on evidence which Defendant did not obtain until after his trial.

"Common law robbery is a lesser included offense of armed robbery[.]" *State v. Tarrant*, 70 N.C. App. 449, 451, 320 S.E.2d 291, 293 (1984).

> The critical difference between armed robbery and common law robbery is that the former is accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened. The use or threatened use of a dangerous weapon is not an essential element of common law robbery.

*State v. Peacock*, 313 N.C. 554, 562-63, 330 S.E.2d 190, 195 (1985) (citations omitted).

When a person commits a robbery with what appears to be an operable firearm, and there is no evidence presented to the contrary, the law presumes that the firearm is a dangerous weapon. *Joyner*, 312 N.C. at 782, 324 S.E.2d at 844; *State v. Thompson*, 297 N.C. 285, 288-89, 254 S.E.2d 526, 528 (1979) (basing the presumption on the Court's reluctance to intimate "that a robbery victim should force the issue merely to determine the true character of the weapon."). When there is no evidence the gun is not dangerous, a defendant is not entitled to an instruction on common law robbery. *Joyner*, 312 N.C. at 783, 324 S.E.2d at 844. But,

> [i]f there is some evidence that the implement used was not a firearm or other dangerous weapon which could have threatened or endangered the life of the victim, the mandatory presumption disappears leaving only a permissive inference, which permits but does not require the jury to infer that the instrument used was in fact a firearm or other dangerous weapon whereby the victim's life was endangered or threatened.

*State v. Allen*, 317 N.C. 119, 124, 343 S.E.2d 893, 897 (1986).

Thus, North Carolina law states that when there is evidence that the implement used during a robbery was not in fact a dangerous weapon, the trial court is required to instruct the jury on common law

robbery. *Joyner*, 312 N.C. at 784, 324 S.E.2d at 845-46 (instruction on common law robbery must be given when there was some evidence that the rifle used during a robbery was unloaded and the firing pin was missing); *State v. Alston*, 305 N.C. 647, 651, 290 S.E.2d 614, 616 (1982) (instruction required when witness identified the gun used during a robbery as a BB gun); *State v. Frazier*, 150 N.C. App. 416, 419-20, 562 S.E.2d 910, 913-14 (2002) (instruction required when evidence was presented that gun used during robbery was unloaded). Without such an instruction, there is a possibility that a defendant could be convicted of a crime he did not commit. *See State v. Joyner*, 67 N.C. App. 134, 136, 312 S.E.2d 681, 682 (1984) (stating evidence gun was unloaded and inoperable "tended to prove the absence of an element of the offense charged"), *aff'd*, 312 N.C. 779, 324 S.E.2d 841 (1985). It is axiomatic that the State must satisfy the jury beyond a reasonable doubt of each element of the offense charged. *State v. McArthur*, 186 N.C. App. 373, 380, 651 S.E.2d 256, 260 (2007).

In the present case, the prosecutor at the time of Defendant's trial possessed evidence that the gun used during the robbery was unloaded and inoperable, evidence which tended to prove the absence of an element of the offense charged. Notwithstanding, the prosecutor told the trial court "there is absolutely no evidence of anything other than robbery with a dangerous weapon in this case." Based on the precedent discussed above, I must agree with the majority that there was no evidence *introduced at Defendant's trial* to support an instruction on the lesser-included offense of common law robbery. Likewise, there was no evidence at trial to indicate that Defendant was entitled to a dismissal of the charge of armed robbery.

III

Defendant next argues that the trial court erred in denying his MAR on the basis of newly discovered evidence.

To determine whether a defendant should prevail on an MAR on the basis of newly discovered evidence, the trial court must consider the following factors:

(1) that the witness or witnesses will give newly discovered evidence, (2) that such newly discovered evidence is probably true, (3) that it is competent, material and relevant, (4) that due diligence was used and proper means were employed to procure the testimony at the trial, (5) that the newly discovered evidence is not merely cumulative, (6) that it does not tend only to contradict

a former witness or to impeach or discredit him, (7) that it is of such a nature as to show that on another trial a different result will probably be reached and that the right will prevail.

*State v. Stukes*, 153 N.C. App. 770, 773, 571 S.E.2d 241, 244 (2002). Defendant has the burden at an MAR hearing of establishing the facts essential to his claim by a preponderance of the evidence. N.C. Gen. Stat. § 15A-1420(c)(5) (2009).

In the present case, the trial court ruled that Defendant did not satisfy (1) the second factor: that the evidence is probably true; (2) the fourth factor: that due diligence was used to procure the testimony at trial; or (3) the seventh factor: that the evidence was of such a nature that a different result would probably have been reached on another trial. The majority discusses only the second and the fourth factor, upholding the trial court's order on the basis of the trial court's determination of probable truth and due diligence. Because I would reverse the trial court, my review is perforce more expansive.

1

Regarding the second factor: that the evidence is probably true, we have recognized that "[t]he trial court is in the best position to judge the credibility of a witness." *State v. Garner*, 136 N.C. App. 1, 14, 523 S.E.2d 689, 698 (1999), *appeal dismissed, disc. review denied*, 351 N.C. 477, 543 S.E.2d 500 (2000). Our Courts have accordingly upheld the trial court's ruling on whether the probably true factor is met *when there is conflicting evidence upon which to make such a determination.*[3] *See, e.g., State v. Eason*, 328 N.C. 409, 435, 402 S.E.2d 809, 823 (1991) (recanted confession); *Britt*, 320 N.C. at 717, 360 S.E.2d at 666 (recanted testimony); *Garner*, 136 N.C. App. at 13, 523 S.E.2d at 698 (recanted confession); *State v. Riggs*, 100 N.C. App. 149, 156, 394 S.E.2d 670, 674 (1990) (conflicting testimony), *disc. review denied*, 328 N.C. 96, 402 S.E.2d 425 (1991); *State v. Hoots*, 76 N.C. App. 616, 618-19, 334 S.E.2d 74, 76 (1985) (recanted statements); *State v. Carter*, 66 N.C. App. 21, 31, 311 S.E.2d 5, 11

---

3. In this regard the probably true factor resembles the sixth factor: that the new evidence does not tend only to contradict a former witness. The probably true factor may thus be extraneous. *See State v. Britt*, 320 N.C. 705, 713, 360 S.E.2d 660, 664 (1987) (recognizing the test as "a modification of the '*Berry*' rule, initially set forth in *Berry v. State*, 10 Ga. 511 (1851) (setting forth essentially the same prerequisites but lacking the requirement that the newly discovered evidence be 'probably true').")., *superceded by statute on other grounds, as stated in State v. Defoe*, —— N.C. ——, —— 691 S.E.2d 1, 4 (2010).

STATE v. WILLIAMSON

[206 N.C. App. 599 (2010)]

(recanted testimony), *disc. review denied,* 310 N.C. 745, 315 S.E.2d 705 (1984); *State v. Thompson,* 64 N.C. App. 485, 492, 307 S.E.2d 838, 843 (1983) (conflicting testimony), *cert. denied,* 313 N.C. 513, 329 S.E.2d 399 (1985).

While the credibility of witnesses remains the exclusive province of the trier of fact, I can discern no valid basis upon which a witnesses' uncontradicted testimony might be dismissed by the trial court as incredible as a matter of law at an MAR proceeding. Recognizing the potential impact of cross-examination, I recognize also that a defendant's right to exculpatory evidence does not turn on any judicial determination that it is more likely true than not. *See State v. Elliott,* 360 N.C. 400, 415, 628 S.E.2d 735, 745-46 (recognizing prosecutor's duty to turn over favorable and material evidence), *cert. denied, Elliott v. North Carolina,* 549 U.S. 1000, 166 L. Ed. 2d 378 (2006).

In the present case, the trial court was confronted with no conflicting evidence regarding the condition of the gun.[4] There was therefore no valid basis under the precedents examined above for the trial court to conclude that Lemon's testimony was not probably true. The majority agrees that the trial court's determination of probable truth must be predicated on some conflicting evidence. The majority insists, however, that Lemon's "evidence at the MAR hearing was not uncontradicted." It is significant to point out that despite reciting two pages of testimony, the majority does not locate any evidence that *contradicted Lemon's statement that the gun was not loaded or operational.*

In sum, the determination of whether Lemon was telling the truth—i.e. whether the gun was in fact unloaded and inoperable— should be determined by a jury in a criminal proceeding, not by a trial judge using a preponderance of the evidence standard. *See Allen,* 317 N.C. at 125, 343 S.E.2d at 897 ("If . . . there is any evidence that the weapon was, in fact, not what it appeared to the victim to be, the jury must determine what, in fact, the instrument was."). Accordingly, I would hold, that the trial court erred in ruling that the new evidence was not probably true.

---

4. The trial court observed at the MAR hearing that Defendant had identified the gun as a .38. Detective Poe testified at the MAR hearing that a .38 is a revolver, not an automatic as Lemon described. This inconsistency *of type* does not constitute a contradiction of Lemon's evidence that the gun was not loaded.

2

Regarding the fourth factor: that due diligence was used and proper means were employed to procure the testimony at the trial, the trial court noted that Lemon did not mention in his 5 May interview with Defendant's counsel that the gun was inoperable and unloaded. The trial court noted also that Defendant's counsel did not see the notice that was put in his mailbox on 4 May until after Defendant was convicted. The trial court concluded that it could not find that due diligence was employed.

Our Supreme Court has indicated that in requesting a new trial on the basis of newly discovered evidence, "both counsel and litigants are presumed to have been properly advised in preparing for trial, and this presumption is not to be lightly overthrown or rebutted." *State v. Lea*, 203 N.C. 316, 322, 166 S.E. 292, 295, *cert. denied, Lea v. North Carolina*, 287 U.S. 668, 77 L. Ed. 576 (1932). In defining the proper standard by which to test this presumption of diligence, the Court stated, "[i]f it should appear that the newly discovered evidence, 'by ordinary diligence, could have been discovered and used at the hearing, or was in possession of the counsel or agent of the party,' the application will be denied." *Id.* at 322, 166 S.E. at 295-96 (quoting *Matthews v. Joyce*, 85 N.C. 258, 267 (1881)).

In *State v. Stanley*, 74 N.C. App. 178, 327 S.E.2d 902, *disc. review denied*, 314 N.C. 546, 335 S.E.2d 318 (1985), this Court considered a challenge to the trial court's denial of a defendant's MAR. *Id.* at 184, 327 S.E.2d at 906. The defendant presented new testimony at the MAR hearing of a witness who had testified at trial. *Id.* This Court affirmed the denial of the defendant's MAR in part because the defendant had already had an opportunity to question the witness during the trial about the issue, and failed to do so. *Id.* at 185, 327 S.E.2d at 907. We concluded that this represented a lack of due diligence. *Id.*; *see also State v. Dixon*, 259 N.C. 249, 251, 130 S.E.2d 333, 334 (1963) (no error in denying MAR when defendant failed to question a testifying witness regarding the evidence).

Neither of these cases involved evidence that would have entitled the defendant to a different instruction at trial. In *Stanley*, the defendant sought to introduce evidence of a similar sexual encounter by another male with the female he was accused of raping. *Stanley*, 74 N.C. App. at 184, 327 S.E.2d at 906. This Court held that the new evidence was not relevant. *Id.* at 185, 327 S.E.2d at 907. The defendant in *Dixon* was convicted of driving while under the influence, and

sought a new trial after learning that his blood sample had been destroyed prior to trial. *Dixon*, 259 N.C. at 250, 130 S.E.2d at 334. Our Supreme Court held that the defendant did not establish a single one of the seven factors. *Id.* at 251, 130 S.E.2d at 334.

In *State v. Saults*, 299 N.C. 319, 261 S.E.2d 839 (1980), our Supreme Court considered a challenge to the trial court's denial of a defendant's MAR. In that case, the defendant was convicted as an accessory to arson. *Id.* at 320, 261 S.E.2d at 840. He later filed an MAR, presenting affidavits of witnesses which tended to contradict the evidence against him. *Id.* at 321, 261 S.E.2d at 840. The trial court denied the defendant a new trial on the basis of his lack of due diligence in discovering or utilizing the evidence. *Id.* at 322, 261 S.E.2d at 841.

On appeal, our Supreme Court recognized the new evidence as relevant to the defendant's guilt. *Id.* at 322-23, 261 S.E.2d at 841. The Court then framed the issue in terms of "whether [defendant] had sufficient information so that he *should have talked* to [the newly offered witnesses] some time before" his conviction. *Id.* at 323, 261 S.E.2d at 841. Considering the evidence in terms of when it became known to the defendant, the Court concluded that the defendant had no additional "reason to believe that [the new witnesses] had relevant information that could aid him in his defense." *Id.* at 323, 261 S.E.2d at 842. The Court therefore held that the defendant was entitled to a new hearing. *Id.* at 325, 261 S.E.2d at 843.

Our Supreme Court considered another MAR in *State v. Jones*, 296 N.C. 75, 248 S.E.2d 858 (1978). The *Jones* defendant was tried for arson based on the testimony of a witness who claimed that defendant threw kerosene on the floor of their shared apartment and started a fire. *Id.* at 76, 248 S.E.2d at 859. The defendant maintained that he returned home to find the apartment in flames. *Id.* at 77, 248 S.E.2d at 859. After his conviction, the defendant learned of a police report that indicated his clothing (which had been seized) showed no evidence of the presence of kerosene or other flammable accelerants. *Id.* at 78-79, 248 S.E.2d at 860.

The State argued on appeal that the defendant failed to show due diligence because he did not make a motion to compel discovery. *Id.* at 79, 248 S.E.2d at 861. Our Supreme Court disagreed, stating that there was nothing to put the defendant on notice of the report, and that the prosecutor "was under a continuing duty to disclose relevant, discoverable information as he received it." *Id.* at 79-80, 248 S.E.2d at

861. The Court concluded that "[t]he report was clearly, on these facts, a factor which defendant was entitled to have the jury consider." *Id.* at 80, 248 S.E.2d at 861. The Court therefore granted the defendant a new trial. *Id.*

In the present case, the State did not obtain Lemon's statement until the day before Defendant was tried. At so late an hour, Defendant had no reason to believe that the State had obtained any other relevant information that could aid him in his defense. Furthermore, the report was clearly a factor which Defendant was entitled to have the jury consider. Unlike *Stanley* and *Dixon* where the defendant had an opportunity at trial to question the witness, once the prosecutor here learned of Lemon's statement regarding the gun, he chose not to call Lemon to testify in Defendant's trial. Also unlike *Stanley* and *Dixon*, the evidence in this case would have required a different instruction at trial. *Allen*, 317 N.C. at 124, 343 S.E.2d at 897; *Joyner*, 312 N.C. at 784, 324 S.E.2d at 845. On the basis of *Saults* and *Jones*, I would hold that the trial court erred in concluding that Defendant failed to show due diligence in discovering the evidence.

Moreover, cases in which a defendant's failure to establish due diligence alone justified denying him a new trial consistently involve a defendant who *knew of the evidence when he was tried. See State v. Powell*, 321 N.C. 364, 371, 364 S.E.2d 332, 336, *cert. denied, Powell v. North Carolina*, 488 U.S. 830, 102 L. Ed. 2d 60 (1988); *State v. Cronin*, 299 N.C. 229, 244, 262 S.E.2d 277, 287 (1980). Generally, we have denied other defendants new trials only when additional factors were also lacking. *See State v. Person*, 298 N.C. 765, 771, 259 S.E.2d 867, 870 (1979) (defendant failed to establish new evidence was material, competent, or relevant, that it was not merely corroborative, a different result would be reached, and due diligence); *State v. Beaver*, 291 N.C. 137, 144, 229 S.E.2d 179, 183 (1976) (defendant failed to prove new evidence would not be merely cumulative, and due diligence); *Dixon*, 259 N.C. at 251, 130 S.E.2d at 334 (defendant established not one of seven factors); *Riggs*, 100 N.C. App. at 156-57, 394 S.E.2d at 674 (defendant failed to prove evidence was probably true, not merely cumulative, a different result would be reached, and due diligence); *Stanley*, 74 N.C. App. at 185, 327 S.E.2d at 906-07 (defendant failed to establish new evidence was relevant, and due diligence); *State v. Baker*, 65 N.C. App. 430, 447, 310 S.E.2d 101, 113 (1983) (defendant failed to show a different result would be reached, new evidence tended only to contradict a former witness, and due diligence), *cert.*

*denied,* 312 N.C. 85, 321 S.E.2d 900 (1984); *State v. Clark,* 65 N.C. App. 286, 293, 308 S.E.2d 913, 917 (1983) (defendant failed to show new evidence was not merely cumulative, different result would be reached, and due diligence), *disc. review denied,* 310 N.C. 627, 315 S.E.2d 693 (1984); *Thompson,* 64 N.C. App. at 492, 307 S.E.2d at 843 (defendant failed to show evidence was newly discovered, that it was not merely cumulative, that it was probably true, that a different result would be reached, and due diligence).

In the present case, there is no evidence that Defendant actually knew about Lemon's statement when he was tried. Under the precedents examined above, I would hold that Defendant is entitled to a new trial.

3

Regarding element No. 7: that the evidence was of such a nature that a different result would probably have been reached on another trial, the State argues that the jury had ample evidence with which to convict Defendant. At the end of the MAR proceeding, the trial court stated. "I think when you look at the balance, those two statements [i.e. Defendant's confession] were so overwhelming that any mistake in not putting this evidence in was probably harmless."

Harmless error analysis is not appropriate in evaluating a trial court's failure, in an armed robbery prosecution, to provide an instruction on the lesser included offense of common law robbery. A defendant tried for armed robbery is entitled to an instruction on the lesser included offense of common law robbery when some evidence is presented that the apparent gun was not in fact a dangerous weapon. *See Joyner,* 312 N.C. at 784, 324 S.E.2d at 845. Granting that a trial court errs when it fails to provide such an instruction, an analysis that asks only whether the verdict was affected would render our review of such errors meaningless.

Our Supreme Court recognized this principle in *State v. Alston.* Defendants in *Alston* were tried for armed robbery. 305 N.C. at 648, 290 S.E.2d at 614. The Court held that when evidence was presented that the gun wielded was not in fact a dangerous weapon (but a BB rifle), the trial court erred in failing to instruct the jury on the lesser included offense of common law robbery. *Id.* at 651, 290 S.E.2d at 616. Defendants were granted a new trial on the basis of that error *without any inquiry into whether the requested instruction would have affected the verdict. Id.; see also Frazier,* 150 N.C. App. at 419-20, 562 S.E.2d at 913-14 (no harmless error analysis).

**STATE v. WILLIAMSON**

[206 N.C. App. 599 (2010)]

In the present case, the inquiry of how the requested instruction would affect whether Defendant is convicted of armed robbery or common law robbery is for a jury to decide. *See Allen*, 317 N.C. at 124, 343 S.E.2d at 897. Because Defendant's request for an instruction on common law robbery would have been granted had the new evidence been considered, I would hold that the trial court erred in ruling that the evidence was not of such a nature that a different result would probably have been reached on another trial. The majority does not disagree that the trial court erred in applying a harmless error standard in considering this factor.

In light of the foregoing, I would hold that the trial court erred in ruling that Defendant failed to establish all seven factors of the relevant test. I would therefore reverse the trial court's order denying Defendant's MAR. Beyond the technical considerations of precedent addressed thus far, there is a more fundamental reason to grant Defendant a new trial in this case: to prevent manifest injustice.

The record demonstrates that the prosecutor obtained a statement from Dorsey Lemon that the gun he carried in the robbery was not operational. The prosecutor created a report detailing Lemon's statement, and left it in defense counsel's mailbox at the courthouse the afternoon before Defendant's trial. Aware of what Lemon would say at Defendant's trial, the prosecutor chose not to call him as a witness, and never mentioned his statement to defense counsel during Defendant's trial. This sequence of events leads to an obvious conclusion: at the time the prosecutor told the court that there was "absolutely no evidence" that the gun was unloaded and inoperable, he was aware that defense counsel did not know of the existing evidence to the contrary.

That the prosecutor could rely on the defense attorney's ignorance of exculpating evidence strongly suggests a patent unfairness in Defendant's trial. *See State v. Payne*, 327 N.C. 194, 202, 394 S.E.2d 158, 162 (1990) ("[T]he purpose of discovery under our statutes is to protect the defendant from unfair surprise[.]"), *cert. denied, Payne v. North Carolina*, 498 U.S. 1092, 112 L. Ed. 2d 1062 (1991). I recognize that Defendant does not here allege any violation of his right to discovery under *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963). I cannot ignore the fact, however, that of the available methods of delivery, the one chosen by the prosecutor here was the one calculated least likely to ensure Defendant's actual notice. Though this practice may represent adherence to the strict letter of the law, it

also comes very near to violating the spirit of fair dealing articulated in *Brady*: "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Id.* at 87, 10 L. Ed. 2d at 218. Indeed, the record in this case "casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice." *Id.* at 88, 10 L. Ed. 2d at 219.

The majority holds that defense counsel failed to establish that he exercised due diligence in discovering Lemon's statement. This conclusion penalizes Defendant for the conduct of his own attorney with no consideration given to the conduct of opposing counsel. I have found no case defining due diligence where a prosecutor engages in a subtle but deliberate attempt to forestall a defendant's discovery of existing exculpatory evidence. I believe that such a scenario demands a different calculus of due diligence than is here employed. The alternative is the perpetuation of such prosecutorial gamesmanship as appears in the facts of this case. If it is legal, that does not make it just.

IV

Defendant also argues that the trial court erred in failing to file a written order with findings of fact and conclusions of law. I believe this error also militates against affirming the trial court's disposition.

At the conclusion of the MAR hearing, the trial court instructed the prosecutor to draw up an order. Although the prosecutor indicated that such an order would be drafted, it does not appear that the order was ever filed.[5] There is thus no order disposing of Defendant's MAR in the record before us.

N.C. Gen. Stat. § 15A-1420 deals with the procedure on motions for appropriate relief. That statute, in pertinent part, states:

(4) If the court cannot rule upon the motion without the hearing of evidence, it must conduct a hearing for the taking of evidence, and must make findings of fact. . . .

. . . .

(7) The court must rule upon the motion and enter its order accordingly. When the motion is based upon an asserted violation

---

5. Defendant asserts in his brief "[t]he Court requested a written order, which was never filed." The State does not dispute that no order was filed, and does not explain the omission.

of the rights of the defendant under the Constitution or laws or treaties of the United States, the court must make and enter conclusions of law and a statement of the reasons for its determination to the extent required, when taken with other records and transcripts in the case, to indicate whether the defendant has had a full and fair hearing on the merits of the grounds so asserted.

N.C. Gen. Stat. § 15A-1420(c) (2009). The State contends that the trial court is not required to make written findings of fact or conclusions of law when, as here, the motion is not based upon an asserted violation of the rights of the defendant under the Constitution, laws or treaties of the United States.

"When post-conviction relief is sought by way of a motion for appropriate relief in the Superior Court, that court ordinarily must make findings of fact and conclusions of law in its order granting or denying relief." *State v. Bush*, 307 N.C. 152, 168, 297 S.E.2d 563, 573 (1982). Our Supreme Court considered the relevant statute in *State v. McHone*, 348 N.C. 254, 499 S.E.2d 761 (1998). In the context of determining whether defendant was entitled to a hearing, the Court there stated:

Subsection (c)(7) of the statute . . . provides that if a defendant asserts with specificity in his motion for appropriate relief that his conviction was obtained in violation of the Constitution of the United States, the defendant is entitled to have the trial court make conclusions of law and state its reasons before denying the motion. . . . *[T]his provision is merely a directive to the trial court to make written conclusions of law and to give its legal reasoning for entering its order*, such that its ruling can be subjected to meaningful appellate review.

*Id.* at 257, 499 S.E.2d at 762 (emphasis added). The Court thus read subsection (c)(7) to require a written order, although the word "written" does not appear in that subsection.

*McHone* does not, however, stand for the principle that a written order is required only where a constitutional violation is alleged, as the State contends. Rather, subsection (c)(4) must be read in conjunction with subsection (c)(7). *See id.* at 257, 499 S.E.2d at 763 ("[S]ubsection [(c)(7)] of the statute must be read *in pari materia* with the other provisions of the same statute."). Subsection (c)(4) specifies that when a trial court conducts an evidentiary hearing, it

must make findings of fact. N.C. Gen. Stat. § 15A-1420(c)(4). The first sentence of subsection (c)(7) states, without reference to any alleged constitutional violation, "[t]he court must rule upon the motion and enter its order accordingly." N.C. Gen. Stat. § 15A-1420(c)(7).

Following the reasoning in *McHone*, I believe that when the trial court makes findings of fact pursuant to subsection (c)(4), it must also file a written order stating those findings. It is only thereby "that its ruling can be subjected to meaningful appellate review." *McHone*, 348 N.C. at 257, 499 S.E.2d at 762. No such order appears in the record before us.

Moreover, I disagree with the State's assertion that the trial court's findings which appear in the transcript provide a sufficient basis to overlook this error. As the State acknowledges elsewhere, the correct standard of review for the trial court's disposition of an MAR requires us to consider an order entered by the trial court. *See State v. Stevens*, 305 N.C. 712, 719-20, 291 S.E.2d 585, 591 (1982) ("In reviewing orders entered pursuant to that act, this court held that the findings of fact of the trial judge were binding upon the petitioner if they were supported by evidence."); *State v. Baker*, 312 N.C. 34, 40, 320 S.E.2d 670, 675 (1984) ("Findings of fact made by a court in its order granting or denying a motion for appropriate relief are binding on appeal if supported by evidence in the record."). We are unable to follow the prescribed standard of review in the absence of a proper order.

It follows that the trial court erred in not filing a written order as required by N.C. Gen. Stat. § 15A-1420(c)(4) & (7). In the present case, this procedural error compounds the substantive errors discussed above. I would hold that the trial court erred by denying Defendant's MAR. Accordingly, I respectfully dissent from the majority's conclusion to the contrary.